Andrew C. Wilson

*v.*

The Trustees of Schools.

*Filed at Springfield June 10, 1891.*

Ejectment—*writ of possession—after seven years.* A judgment in ejectment, by analogy to other judgments, becomes dormant after the lapse of seven years, and can only be executed after that time by being revived by *scire facias.* After the lapse of seven years the court has no power to issue a writ of possession without a revival of the judgment.

Appeal from the Circuit Court of Calhoun county; the Hon. George W. Herdman, Judge, presiding.

Messrs. Withers & Rainey, for the appellant:

It is the doctrine in this State that one who does not enter or purchase *pendente lite* can not be injuriously affected by a judgment or decree to which he is not a party. *Leindecker* v. *Waldron,* 52 Ill. 283; *Brush* v. *Fowler,* 36 id. 53; *Cadwallader* v. *Harris,* 76 id. 372; Freeman on Executions, sec. 475.

Where there is doubt the writ will not issue. *Goit* v. *Dickerman,* 20 Wis. 630.

A writ of possession, where the common law on the subject is in force, must issue within a year and a day, or else the judgment must be revived by *scire facias.* Freeman on Executions, sec. 470, and cases cited.

If the plaintiff takes peaceable possession under his judgment, by the consent or acquiescence of the defendant, even without the aid of a writ, the judgment is satisfied thereby, and no writ of possession can afterward issue.  *Hinton* v. *McNeal*, 5 Ohio, 509; *Hough* v. *Morton*, 9 id. 45.

Mr. E. A. PINERO, and Mr. T. J. SELBY, for the appellees:

We claim that no notice was necessary to McCoy, nor to James Wilson, because a judgment in ejectment is conclusive as to the title established in such action upon the party against whom the same is rendered, and against all persons claiming from, through or under such party by title accruing after the commencement of such action.    Rev. Stat. 1887, sec. 34, "Ejectment;" *Oetgen* v. *Ross*, 54 Ill. 79; Sedgwick & Wait on Trial, secs. 541, 562.

All who enter or acquire interest from or through, or who entered subsequent to commencement of action, are privies under judgment in ejectment.    Freeman on Judgments, sec. 171.

If the writ of possession could issue and be executed but once, it is idle to hold that the judgment is binding and conclusive, for if the defendant again entered upon the lands there would be no method at the disposal of the plaintiff by which the judgment could be made practically effectual, and the defendant again dispossessed.    Sedgwick & Wait on Trial, sec. 551, pp. 401-403.

Under the practice in New York, the writ of possession in ejectment having been executed, defendant having been out of possession a few days, and plaintiff is dispossessed by a person claiming under the defendant's title, an *alias* writ is awarded, etc.    Sedgwick & Wait on Trial, sec. 552, p. 403; Freeman on Executions, sec. 470, p. 771.

In this State the practice is, that the court rendering judgment in ejectment exercises a species of equitable jurisdiction over the writ of possession, and controls its execution.    Free-

man on Executions, sec. 72, p. 772; *Oetgen* v. *Ross,* 47 Ill. 143.

Even if the sheriff gives possession and the writ be returned, yet if the plaintiff be afterward disturbed by the late tenants, the defendants, or by any one in collusion with them, the court will order a new *habere* to issue, and not compel the plaintiff to resort to another ejectment. Sedgwick & Wait on Trial, sec. 553, p. 404, and cases cited.

The court is bound, in good conscience, to maintain and continue the party in possession of the lands to which it has adjudged him to be entitled, otherwise the defeated party might constantly undo the action of the court, and practically nullify its mandate. Sedgwick & Wait on Trial, sec. 553.

The sheriff, in executing the writ of possession, may turn out a person against whom the writ did not issue. The person injured may apply to the court issuing the writ and procure an order directing restitution, or may enjoin the writ of possession. Freeman on Executions, sec. 476; Sedgwick & Wait on Trial, sec. 558.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This was a petition or motion in the Circuit Court of Calhoun County by the Trustees of Schools of Township 12, Range 2 in said county for a special order granting a writ of possession, upon a judgment in ejectment for the recovery of certain land in said county theretofore rendered at the October term, 1879, by said court in favor of said Trustees against Andrew C. Wilson, to be issued to the Sheriff of the county to put the Trustees in possession of said premises, alleged to be unjustly withheld from them by said Wilson and those claiming from, through and under him since the rendition of said judgment. To the petition was attached a certified copy of the judgment. The petition was filed on September 30, 1890.

Notice having been duly served upon Andrew C. Wilson on October 1, 1890, that a motion would be made for an order granting the writ, Wilson filed a sworn answer on October 13, 1890, in which he admitted that the judgment in ejectment had been rendered against him at the October Term, 1879, of said court, and made the following allegations: that, immediately after the judgment was rendered, he surrendered the possession of the premises to the plaintiff Trustees, who took possession of them and used them for school purposes until some time in 1883, or 1884, when they abandoned them for school purposes and selected a new site; that the Trustees then voluntarily surrendered the premises to the respondent, who controlled and possessed them, with the full knowledge and consent of the Trustees, from that time until March, 1885, when he conveyed them by deed to one McCoy; that McCoy took possession of them and controlled them until December 18, 1889, at which time he conveyed them by deed to James Wilson; that, when the said notice was served and the said petition was filed, James Wilson, and not respondent, was in the sole and exclusive possession of the premises, and this proceeding, if brought at all, should have been brought against James Wilson, and not the respondent; that respondent neither claims possession of the premises, nor any interest therein, but claims that, by reason of his surrender thereof to the trustees upon the rendition of the judgment, and their acceptance and use of the same for school purposes thereafter and until their abandonment of the same, the court has no power to issue any writ against respondent, or to tax him with costs in this behalf; that, when the judgment was rendered, respondent held the fee simple Government title, and the Trustees claimed title for school purposes by reason of long use and possession for such purposes, and the statute of limitations; that, when such abandonment took place, and a new school site was chosen and used by the Trustees, the premises reverted to and became the sole property of respondent; that

respondent's possession thereof was taken by him peaceably and with the knowledge and consent of the individual trustees representing the plaintiffs at that time; that therefore respondent became the rightful owner of the premises and rightfully in possession of the same, subsequent to the judgment, and so continued until he sold and conveyed them as aforesaid. The petition did not call for an answer under oath.

The judgment in ejectment finds the defendant guilty of unlawfully withholding the premises from the plaintiffs, and that the fee simple title thereto is in plaintiffs, and adjudges that plaintiffs have their writ of possession for the same, and recover of the defendant the costs of the suit.

Upon the hearing of the petition, the Trustees introduced the affidavits of Samuel A. White and Robert C. Beatty, setting forth that, after the rendition of the judgment, the directors (or Trustees) took possession of the premises without any opposition of the defendant, and held and occupied the same "until or about in the year, 1885," when the Trustees took possession of a new school house, and shortly thereafter the defendant took possession of the premises without leave, or license, or permission of the Trustees, and he and parties under him have unlawfully held possession of the same ever since. In connection with these affidavits the Trustees introduced the judgment in ejectment. The defendant offered in evidence his sworn answer above set forth, as an affidavit, but produced no deeds to McCoy and James Wilson, or copies thereof. The defendant moved to dismiss the petition which motion was overruled, and exception was taken.

On October 16, 1890, being one of the days of the October Term, 1890, of said court, the court entered a special order, granting the prayer of the petition, and finding, that the premises were unlawfully held by the defendant, Andrew C. Wilson, and ordering that a writ of possession be issued against the defendant in the judgment, directed to the Sheriff commanding the latter within sixty days to deliver possession of the

19—138 Ill.

land to the plaintiffs, and "if the said defendant, or any one in possession of said land fails or refuses to give up possession of said land on demand under said writ, that such defendant or others so refusing as aforesaid, be held in contempt of this court; that said defendant pay the costs of this proceeding."

From this judgment or order for a writ of possession, as thus entered at the October Term, 1890, the present appeal is prosecuted.

It will be noted that the judgment in ejectment was rendered at the October Term, 1879, and the order for the writ was not entered until the October Term, 1890, there being a period of eleven years between the two dates. The question is, whether the Circuit Court had the power to order the issuance of the writ of possession more than seven years after the entry of the judgment.

In construing section 26 of the Attachment Act, which provides that "the practice and pleadings in attachment suits, except as otherwise provided in this Act, shall conform, as near as may be, to the practice and pleadings in other suits at law," we have held that the word, "practice," as there used, includes the mode of serving mesne process and the mode of executing final process, and refers to the manner in which an attachment writ is to be levied, and also to the manner in which an execution is to be levied. (*Union Nat. Bank of Chicago* v. *Byram,* 131 Ill. 92.) So, in section 10 of the Ejectment Act, which provides that "the rules of pleading and practice in other actions shall apply to actions of ejectment, so far as they are applicable and except as is otherwise provided," the word, "practice," applies to and includes the time and mode of issuing and returning final process in ejectment suits. (*Bowar* v. *Chicago W. D. Ry. Co.* 136 Ill. 101.) The Act in relation to judgments provides, that "no execution shall issue upon any judgment after the expiration of seven years from the time the same becomes a lien, except upon the revival of the same by *scire facias.*" (Rev. Stat. chap. 77, sec. 6.) By analogy,

it must be held that a judgment in ejectment becomes dormant after the lapse of seven years, and can only be executed after that time by being revived. (*Bowar* v. *C. W. D. Ry. Co. supra.*) We, therefore, think that, inasmuch as the judgment in the present case was more than seven years old in October, 1890, the court had no power to issue a writ of possession at that time without a revival of the judgment by *scire facias* as required by the statute.

The judgment of the Circuit Court is reversed and the cause is remanded to that court with directions to proceed in accordance with the views herein expressed.

*Judgment reversed.*