Elizabeth Bowar

*v.*

The Chicago West Division Railway Company.

*Filed at Ottawa January 22, 1891.*

1. EJECTMENT—*conclusiveness of judgment.* A judgment in ejectment finding title and the right of possession in the plaintiff, is conclusive in respect of the title of the defendant and his right to possession, without regard to the mode of executing the judgment.

2. SAME—*writ of possession — within what time it may issue.* The common law rule that a writ of possession, in ejectment, shall not issue for the first time after a year and a day from the entry of judgment, is not now in force in this State, it having been repealed by implication. The judgment does not become dormant until after the lapse of seven years from its entry, and may be executed within that time without being revived.

3. But if the common law rules were not repealed, the issue of a writ of possession after the lapse of a year and a day would be merely irregular, except in cases where it had been enjoined or stayed by agreement, appeal or writ of error, and if issued after that time the writ would not be void, but voidable only.

4. SAME—*control of the court over final process.* In ejectment, the court that renders judgment exercises a species of equitable jurisdiction over the writ of possession, recalling it if justice requires, and sometimes, after it has been executed, awarding a writ of restitution. But restitution will not be awarded when, by the judgment, the plaintiff has both the title and the right to immediate possession.

5. SAME—*entry without writ of possession.* Where the plaintiff in ejectment recovers judgment for the recovery of land, he may enter without suing out a writ of possession. If the property is unoccupied, the successful plaintiff may enter peaceably into possession, and such possession will not be disturbed by writ of restitution while the judgment remains in full force and effect.

6. APPEAL—*whether a freehold involved—writ of restitution—in ejectment.* A petition filed in an ejectment suit to quash a writ of possession after its execution, and to restore the defendant's possession, involves a freehold, within the meaning of the statute allowing an appeal to this court.

APPEAL from the Superior Court of Cook county; the Hon. John P. Altgeld, Judge, presiding.

On May 9, 1883, the Chicago West Division Railway Company recovered a judgment in ejectment, in the Superior Court of Cook county, against appellant, for the premises in controversy, in fee, and a writ of possession was awarded. No writ was in fact issued until May 23, 1884,—a year and fourteen days after the rendition of said judgment. This writ was returned unexecuted, by order of plaintiff's attorney.˙ December 10, 1884, an *alias* writ issued, and was returned in like manner. January 21, 1888, a third writ was issued, the execution of which was enjoined, at the suit of appellant. March 24, 1890, this injunction was dissolved, and immediately thereupon a fourth writ of possession issued under said judgment, and was duly executed by the sheriff putting appellee in possession. April 9, 1890, appellant filed her petition in the Superior Court, in and by which she sought to have the writ quashed, and asking a writ of restitution restoring her to possession. April 16, 1890, the court denied the relief and dismissed said petition, and from this order appellant prosecutes an appeal to this court.

Messrs. Duncan & Gilbert, for the appellant:

At common law a writ of possession in an action of ejectment could not issue after a year and a day from the rendition of the judgment, without a revival by *scire facias*. 3 Bacon's Abr. title "Ejectment;" 2 Sellen's Pr. 204; Adams on Ejectment, sec. 246, p. 415; Runnington on Ejectment, 458; *Lowry* v. *Jenkins*, 3 Bibb, 314; Freeman on Executions, 470; *Withers* v. *Harris*, 3 Ld. Raym. 806; *Putland* v. *Newman*, 6 M. & S. 179.

The limitation begins from the day the judgment is entered. *Emmons* v. *Bishop*, 14 Ill. 152; *Pugh* v. *Reat*, 107 id. 440.

The Ejectment act contains no provision as to the time within which a writ of possession may issue.

Repeal by implication is not favored. *Chicago* v. *Quimby*, 38 Ill. 274; *Supervisor* v. *Campbell*, 42 id. 490; *Hume* v. *Gos-*

*sitt*, 43 id. 297; *People* v. *Barr*, 44 id. 198; *Butz* v. *Kerr*, 123 id. 659.

As the writ of possession was improperly issued, it will be quashed, and a writ of restitution awarded. In the determination of this question no inquiry can be made into the title of the respective parties. The courts have uniformly held, that when a party has obtained the possession of property by an abuse of the process of the court, he will not be heard upon any question affecting his right to it, until he has restored it to the possession of the one from whom it was taken. It would be a mockery to set aside the writ without restoring the parties to the possession of the premises. *Chamberlain* v. *Choles*, 35 N. Y. 477; *Campau* v. *Coates*, 17 Mich. 235; *Perry* v. *Tupper*, 70 N. C. 538; 71 id. 385.

Messrs. Goudy, Green & Goudy, for the appellee:

In an ejectment suit a writ of possession will be recalled and a writ of restitution awarded where more land has been taken than was recovered, or where one has been turned out of possession by mistake, or where the judgment itself is attacked. The court which renders the judgment exercises a species of equitable jurisdiction over the writ of possession, recalling it if justice requires. But a writ of possession irregularly issued will not be quashed and a writ of restitution awarded, unless the defendant shows, on his part, some right to the possession. *Oetgen* v. *Ross*, 47 Ill. 142; *Coleman* v. *Henderson*, 2 Scam. 251; *Jackson* v. *Hasbrouck*, 5 Johns. 366; *Troughton* v. *Roe*, 4 Burr. 1996; *Watson* v. *Trustees*, 37 N. C. 211; *Stratford* v. *Shail*, 13 L. J. Q. B. 321.

The judgment in the case at bar is conclusive of the title of the appellee to the premises in question, and of its right to the possession. *Taylor* v. *Horde*, 1 Burr. 60; 1 Starr & Curtis' Stat. 989.

The appellee had the right to take possession of the premises, by virtue of the judgment, without any writ. 2 Sellen's

Pr. 202; *Whitbeck* v. *Van Rensselaer*, 64 N. Y. 27; *People* v. *Cooper*, 20 Hun, 486.

Under the old common law in England, a judgment became dormant unless execution was issued within a year and a day, because that was the general limitation, after which *laches* anciently attached.   When the action of ejectment was introduced, the practice in regard to writs of execution upon judgments in ejectment followed the practice in that regard already established in other cases.   2 Tidd's Pr. 1102, 1103, 1248; Runnington's Pr. 428.

In this State, the practice in regard to writs of execution upon judgments was originally the same as under the old English law.   Judgments in ejectment were subject to such practice.   That practice has been changed by statute from time to time, and judgments in ejectment have been subject to such change.   Laws of 1824-25, 150; Laws of 1839, 220; Rev. Stat. 1845, chapter on Judgments and Executions.

The statute now provides that writs of execution may be issued at any time within seven years.   This statute applies to and governs writs of execution upon all judgments, including judgments in ejectment.   Rev. Stat. chap. 77; Rev. Stat. chap. 45.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The judgment of ejectment remaining unreversed, is conclusive of the title of appellee, and of its right to possession of the premises recovered, without regard to the mode of executing the judgment.   Rev. Stat. chap. 45, sec. 34.

It is contended that the writ of possession issued March 24, 1890, was irregular, and should have been quashed.   The judgment was rendered May 9, 1883, finding appellee the owner in fee simple of the premises in controversy, and awarding a writ of possession.   No writ, however, was issued until the 23d of May, 1884,—more than a year and a day after the ren-

dition of the judgment. It is therefore said that the judgment became dormant, and that no writ of possession could issue thereon without a revival of the judgment by *scire facias*,—and such seems to have been the rule at common law. (2 Tidd's Prac. 1000-1007; 2 Bacon's Abridgment, title "Ejectment;" *Oetgen* v. *Ross*, 47 Ill. 147.) In the case cited it was said: "Where a plaintiff in ejectment fails to take out his writ of possession within a year after the judgment, it is doubtful if he is entitled to it without a special order." If a writ of possession issued within a year and a day, and was returned not executed, an *alias* might issue at any time thereafter; and if the plaintiff was prevented from taking his writ by injunction, or if it was stayed by agreement of parties, he might have his writ within the same period after the dissolution of the injunction or expiration of the time for which it was stayed, without *scire facias*. 2 Tidd's Prac. 1005, 1006; Freeman on Executions, 27 a, 470, and cases cited; Adams on Ejectment, sec. 246.

This same rule was applied to executions upon money judgments, and the rule in respect of writs of possession seems to have been adopted in analogy to the limitation upon writs of *fieri facias*. Tidd (2 Prac. 1103) gives the reason for the rule that the plaintiff is put to his *scire facias* after the year, as follows: "The reason why the plaintiff is put to his *scire facias* after the year is, because when he lies by so long after the judgment, it should be presumed that he hath released the execution, and therefore the defendant shall not be disturbed without being called upon, and having opportunity, in court, of pleading release, or showing cause, if he can, why the execution should not go."

When the action of ejectment was introduced, it was doubted whether the statute of 13 Edward 1, (Westminster, 1,) which gave a *scire facias* to the plaintiff in personal actions to revive the judgment when he had omitted to sue out execution within a year from the rendition of judgment, applied to this action.

It seems to have been settled that *scire facias* would lie on a judgment in ejectment, not because there was any such rule of practice specially provided for in ejectment cases, or because it fell within the statute, but because such was the practice in similar actions. (2 Tidd's Prac. 1248.) That is to say, the practice in actions of ejectment was made to conform to the existing practice in personal actions.

Without pausing to discuss or determine whether the time should begin to run from the 9th day of May, the day of the rendition of the judgment, or from the 2d day of June, 1883, upon which latter day the term of court ended at which the judgment was rendered, it may be remarked, that if the latter date is to control, the writ was issued within a year from the entry of the judgment. It is probably held by the weight of authority that the time would commence to run from the day of the rendition.

The statutes of this State do not now contain, and never have contained, so far as we have been able to discover, any provision as to the time within which writs of possession shall issue in ejectment. If the reason for the adoption of the rule at common law is to prevail, a moment's consideration will show that such writs are not limited as at common law. Chapter 77 of the Revised Statutes is entitled "An act in regard to judgments and decrees, and the manner of enforcing the same by execution, and to provide for the redemption of real estate sold under execution or decree." By section 1 of that act, judgments of courts of record are made liens for a period of seven years, provided execution be issued within a year from the rendition of such judgments, and if not so issued they cease to be liens; "but execution may issue upon such judgment at any time within seven years," and shall become a lien from the time the writ is delivered to the proper officer to execute. By section 6 it is provided that no execution shall issue upon any judgment after the expiration of seven years from the time the same becomes a lien, except upon the revival of the same

by *scire facias*. The act is general in its terms, and would seem to apply to all judgments and decrees.

The form of the writ of possession is given in section 42, chapter 45, of the Revised Statutes, and provides not only for the delivery of the premises adjudged to the plaintiff, but provides that a clause may be inserted for the collection of the costs of the suit. It is apparent that if the time within which writs of possession may issue in ejectment is to be determined by analogy to the rule applied in respect to the issuance of final process in other cases in this State, the limitation is seven years, and not one year.

By the statute of this State, the common law of England, so far as applicable and of a general nature, etc., shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority; and it would follow, that the common law rule being considered must be held in force unless changed by the legislature. It is conceded by counsel, as it must be, that the repeal or change of the law contemplated by this statute may be either by express enactment, or by implication from inconsistent legislative provisions. Section 10, of chapter 45, of the Revised Statutes, provides: "The rules of pleading and practice in other actions shall apply to actions of ejectment, so far as they are applicable, and except as otherwise provided." It may very properly be said that this clause of the statute applies more especially to practice in the trial of such causes, but it is not perceived why it does not require the practice in respect to the issuance and return of final process in other cases to be applied to the issuance and return of final process in ejectment cases, unless otherwise provided by statute. The term "practice," in its larger sense, is defined to be, "the mode of proceeding by which a legal right is enforced, as distinguished from the law which gives or declares the right." (Anderson's Law Dic.) The rules of practice in other actions applicable to actions of ejectment which shall be applied, are those legal rules which direct

the course of proceedings in acquiring jurisdiction of parties, and the course adopted by the court whereby rights are effectuated by the application of the proper remedies, and where it is not otherwise provided in actions of ejectment. *Fleischman* v. *Walker et al.* 91 Ill. 318, and cases there cited.

By section 10 of the statute before quoted, it is expressly provided that, so far as applicable to the action of ejectment, and in case it is not otherwise provided by statute, the practice in other cases is to be applied in such actions; and if the practice in other cases can be said to extend to the final process by which the judgment of the court is to be carried into effect, it is obvious that such practice, whether controlled by statute in such other cases, by rule of court or at common law, must, if not otherwise provided by statute, be held to apply in actions of ejectment, and, by clear implication, at least, the common law rule inconsistent with such practice would be repealed.

We are of opinion that the common law rule relied upon is not in force in this State. The reason for its adoption has ceased to exist, and the rule must fail. It is more logical, and more in consonance with the spirit of our laws, to apply and continue the principle upon which the rule applicable to ejectment was originally adopted,—that of analogy to the practice in similar cases,—and to hold that the judgment does not become dormant until after the lapse of seven years from its entry, and may be executed within that period without being revived. It ought, perhaps, to be further remarked here, that the statute now in force in respect of the issuance of final process generally, is radically different from the statute in force when the doubt was expressed in *Oetgen* v. *Ross, supra.*

If, however, the common law rule prevailed, it must be conceded that the issue of a writ of possession after the lapse of a year and a day would be irregular, except in cases where it had been enjoined, stayed by agreement, appeal or writ of

error; but if issued after the expiration of that time, it would not be void, but voidable only. (*Oakes* v. *Williams*, 107 Ill. 154; *Morgan* v. *Evans*, 72 id. 586; *Hernandez* v. *Drake*, 81 id. 34.) Upon proper application before execution the writ might have been quashed for such irregularity. After the writ was executed its quashal could have done appellant no good, unless a writ of restitution had been awarded. It was said in *Oetgen* v. *Ross, supra:* "It is to be remarked that in an action of ejectment the court that renders the judgment exercises a species of equitable jurisdiction over the writ of possession, recalling it if justice requires, and sometimes, after it has been executed, awarding a writ of restitution,"—citing *Coleman* v. *Henderson*, 2 Scam. 251; *Ex parte Reynolds*, 1 Caines, 500; *Jackson* v. *Hasbrouck*, 5 J. R. 366; *Doe ex dem. Troughton* v. *Roe*, 4 Burr. 1996. In the case of *Coleman* v. *Henderson, supra,* it was held that where the party, under his writ of *habere facias possessionem*, had taken more land than was recovered, or disturbed the possession of a person not a party to the suit, the court would, in a summary manner, inquire into the facts, and award a writ of restitution.

The current of authority in this country and in England seems to be, that the right to award the writ of restitution in cases like the one at bar, not falling within any express statute authorizing such writs, arises by equitable construction by the courts, to prevent wrong and injury to a party who has been wrongfully dispossessed of the premises. Upon an application, as here, for a writ of restitution, it is not demandable as a matter of right, but as a matter of justice, only. (*Watson* v. *Trustees of Floral College*, 37 N. C. 211; *Perry* v. *Tupper*, 70 id. 538; *Doe ex dem. Stratford* v. *Shail*, 13 L. J. Q. B. 321.) If, therefore, the judgment in ejectment was conclusive against the right of appellant, both as to the title and right of possession, there could be nothing, even if the writ of possession had been quashed, to call into activity the power to award a writ of restitution. That the appellant could not demand the writ

of restitution as a matter of absolute right, follows necessarily from the fact that the authority to award the writ in cases other than those provided for by statute, is based upon equitable considerations. Here, the law gave to appellee the title and right of possession, and there is no equitable principle apparent which would deprive it of that possession and deliver the premises to appellant. For aught here shown, the court must, upon *scire facias*, revive this judgment, if dormant, and thereupon, by its process, put the plaintiff into possession, as he now is, in all respects.

If possession had been taken of more land than that recovered, or the judgment itself had been attacked, or the party applying for the writ had shown meritorious reasons for granting it, or there had been improper use of the process of the court, the power might well be exercised, and many cases will be found where the writ has been granted under such circumstances. We have been referred to no case where it has been granted in the face of a judgment conclusive not only as to the right of possession but also as to the title, merely because the possession was obtained under irregular process.

The plaintiff, having recovered, had a right of entry without the writ. In 2 Sellon's Practice, 202, it is said: "If the plaintiff has judgment to recover his term, he may enter without suing out an *habere facias possessionem*, for where the land recovered is certain, the recoverer may enter at his own peril, and the assistance of the sheriff is only to preserve the peace." See, also, *Whitbeck* v. *Van Rensselaer*, 64 N. Y. 27; *The People* v. *Cooper*, 20 Hun, 486; *Taylor* v. *Nord*, 1 Burr. 60. Finding the property unoccupied, the successful party may enter peacefully into possession—but he may not enter with force; and such possession would not be disturbed by writ of restitution while the judgment remained in full force and effect. If it be conceded that the writ of possession was irregularly issued, the same, being regular on its face and upon valid judgment, would protect the officer in its execution, and the plaintiff

would be in no worse position than if he had entered without process.

It follows that we are of opinion that if the court below was in error in not quashing the writ of possession, it is an error which can not avail appellant against the force and effect of appellee's judgment.

A motion has been made in this court to dismiss the appeal for want of jurisdiction, no freehold, as it is said, being involved. The original action involved a freehold, and the matter here at issue is so far germane and pertinent, and so involves the recovery in the case, that we are of opinion the jurisdiction may be sustained. The object of this proceeding was to restore appellant to the possession of the land notwithstanding the freehold interest recovered by appellee. To restore appellant it necessarily followed that the judgment in ejectment must be set aside or disregarded. It is true, as we have seen, that this could not be done in this way; but that did not prevent appellant from seeking that relief. If the relief sought involved the right of the plaintiff in ejectment to his freehold, although it be found that it could not be disturbed therein, a freehold was necessarily involved in the litigation.

The judgment will be ·affirmed.　　*Judgment affirmed.*