**COMMERCE FARM CREDIT CO. et al. v. RAMP et al.**

No. 4748.

Court of Civil Appeals of Texas. Amarillo.

April 11, 1938.

Rehearing Denied May 16, 1938.

Terrell, Davis, Hall & Clemens and A. V. Knight, all of San Antonio, and Hoover, Hoover & Cussen, of Canadian, for appellants.

Sanders & Scott and Howard F. Saunders, all of Amarillo, and E. L. Klett, of Lubbock, for appellees.

STOKES, Justice.

We handed down an opinion in this case on February 14, 1938. Appellees and appellants W. H. Potts and Commerce Trust Company have filed motions for rehearing, and upon a consideration of the motions we have concluded we were in error in some of the conclusions reached. The original opinion is therefore withdrawn and the following opinion substituted therefor:

On the 1st day of July, 1916, H. M. Ramp and his wife, Anna, procured from Commerce Farm Credit Company a loan in the sum of $30,000, evidenced by a principal note or bond for that amount, due and payable December 1, 1921, bearing interest from date at the rate of 6 per cent. per annum, evidenced by attached interest coupons, bearing interest from maturity at the rate of 10 per cent. per annum. To secure the payment of the indebtedness, Ramp and wife, on the same day, executed a deed of trust, conveying to JoZach Miller, III, as trustee, 10,168 acres of land located in Hemphill county.

For the purpose of securing six additional interest notes in the aggregate sum of $3,250, of even date with the principal note, Ramp and wife executed a second deed of trust, conveying the same land to JoZach Miller, III, as trustee, the first of these notes being in the sum of $250, and the remaining five in the sum of $600 each, due December 1st of each year, beginning December 1, 1916, payable to Commerce Farm Credit Company of Dallas, Tex., at the office of the Commerce Trust Company in Kansas City, Mo., bearing interest from maturity at the rate of 10 per cent. per annum, all of the notes providing for 10 per cent. additional as attorney's fees if sued upon or placed in the hands of an attorney for collection.

The principal note of $30,000 was acquired by the Commerce Trust Company and assigned to J. M. Grant on September 14, 1916, and by J. M. Grant to his daughter, Mrs. Inez Grant Parker, in 1918.

On January 29, 1921, almost a year prior to the due date of the principal note, H. M. Ramp, individually and as community survivor of the estate of himself and his wife, Anna Ramp, then deceased, procured from the Commerce Farm Credit Company another loan in the sum of $50,000, evidenced by one principal note or bond, payable on the 1st of February, 1931, at the office of Commerce Trust Company in Kansas City, bearing interest from date until maturity at the rate of 6½ per cent. per annum, evidenced by ten interest coupons in the sum of $3,250 each thereto attached, and after maturity at the rate of 10 per cent. per annum. To secure this indebtedness, a first deed of trust lien was executed to JoZach Miller, III, as trustee.

On the same day, Ramp, individually and as community survivor, executed a second deed of trust to JoZach Miller, III, as trustee, to secure the payment of four promissory notes in the sum of $3,125 each, of even date with the deed of trust, and due February 1st of each successive year, beginning with February 1, 1922, which represented 2½ per cent. additional interest on the second loan for the entire period of ten years, both deeds of trust conveying the same land conveyed by the deed of trust given to secure the first loan of $30,000 above mentioned.

A portion of the proceeds of the second loan was applied to the payment of the first loan and interest amounting in the aggregate to $33,643.66, Mrs. Parker receiving $30,605, some $3,000 being applied to an account for interest that had been advanced, and the balance of $16,343.14 was paid to appellee, H. M. Ramp.

On March 7, 1921, the Commerce Farm Credit Company sold and assigned the principal note or bond of the second loan in the sum of $50,000 to appellant Missouri State Life Insurance Company, who, on the 8th of September, 1933, after this suit was filed, assigned the same to appellant General American Life Insurance Company.

The additional interest notes of both the first and second loans were assigned to, and remained throughout the property of, Commerce Trust Company. At no time did Mrs. Inez Parker nor J. M. Grant procure any interest in any portion of the second loan nor of any of the interest notes executed in connection with it. Likewise, at no time did the Missouri State Life Insurance Company nor the General American Life Insurance Company procure or own any interest in the first loan of $30,000 nor of any of the interest notes executed in connection with it.

This suit was filed in the district court of Hemphill county by H. M. Ramp, his second wife, Annie, and his children by his first wife, to wit, Velma, W. E. and H. L. Ramp, against the Commerce Farm Credit Company, a Texas corporation, JoZach Miller, III, George Gerlach, Walter Jones, the First National Bank of Canadian, Missouri State Life Insurance Company, General American Life Insurance Company, and Commerce Trust Company, foreign corporations, alleging that the notes executed by plaintiff H. M. Ramp, in connection with both the first and second loans, were usurious; that the second loan was a renewal and extension of the amount due on the first loan and that the two transactions in reality constituted one continuous transaction between Ramp and the various mortgagees and holders of the notes in connection with both loans, and alleging that Ramp was entitled to credit on the second loan for all amounts which he had paid as interest on both loans, which, if allowed, would extinguish the entire amount due on the second loan.

The General American Life Insurance Company, successor to the Missouri State Life Insurance Company, and owner of the second principal loan evidenced by the bond in the sum of $50,000, answered by general and special exceptions and denied that either of the loans was usurious; denied that the second loan was a renewal or extension of the first loan, but alleged it was a new and distinct transaction, made to discharge, prior to its maturity, the first loan and to pay other obligations of the community estate of H. M. Ramp and his first wife, Anna, and that the first loan was expressly discharged and fully released. It further pleaded that, if either of the loans was usurious, its usury was com-

pletely purged by an instrument executed February 1, 1925, by Ramp and his second wife, whereby the date of payment of certain delinquent interest notes on the second loan was extended, the original interest notes canceled, and Ramp and wife expressly acknowledged complete release and discharge of all claims of alleged usury. It further pleaded estoppel by virtue of the alleged purging agreement and that appellee Ramp was barred by limitation from contesting such instrument.

There was another phase of the case in which the plaintiffs, Ramp et al., alleged the ownership by appellees of a judgment in the sum of $7,802.60, rendered in the district court of Hemphill county on the 30th of August, 1924, in favor of First National Bank of Canadian against George Gerlach and H. M. Ramp, the details of which we will set out in discussing that phase of the matter in the opinion.

The case was tried before a jury and submitted upon special issues, all of which were answered in favor of appellees, except two, which were not answered, and, based upon the verdict of the jury, the trial court rendered judgment in favor of appellees, annulling and canceling the principal note or bond of the second loan in the sum of $50,000, together with the deed of trust securing it; the series of four notes in the sum of $3,125, executed as evidence of a portion of the interest on the second loan and the deed of trust securing them; the interest coupons attached to the principal note and a series of seven notes, the first being for $5,750 and the remaining six in the sum of $1,250 each, dated February 1, 1925, executed by Ramp in accordance with the alleged purging agreement, and also canceling the judgment in cause No. 1783, rendered in 1924 by the district court of Hemphill county against Ramp and Gerlach in the sum of $7,802.60. The judgment also canceled the deeds of trust and all liens on the land involved, and enjoined the appellants or any of them from selling, or attempting to sell, the same or any part thereof, and assessed against appellants all costs of the suit.

Appellants duly excepted to the judgment, gave notice of appeal, and have perfected their appeal to this court.

By a number of assignments of error appellants raise the question of the correctness of the judgment in applying as a credit on the second loan of $50,000 of date

January 29, 1921, the interest paid by appellee Ramp on the first loan of $30,000, amounting in the aggregate to $11,843.66. Appellees contend that this was a proper credit on the ground that the second loan was a renewal and extension of the first loan; that the entire transaction concerning both loans was a continuous one, and that the second loan was made for the purpose of extending and renewing the indebtedness owing by appellee Ramp on the first loan; that the first loan was usurious and all interest paid on it should be applied to the principal of the debt which is now evidenced by the second loan. In the view we take of the case, it is immaterial whether the first loan was usurious or not. The record shows, without dispute, that the principal note or bond of the first loan in the sum of $30,000 was owned at various times by the Commerce Farm Credit Company, the Commerce Trust Company, J. M. Grant, and his daughter, Inez Grant Parker. At no time was any portion of the first loan or any interest notes in connection with it owned by either the Missouri State Life Insurance Company or the General American Life Insurance Company, who were the owners of the $50,000 note.

The holders of the first loan were strangers to the second loan contract, and, even if it be granted that the first loan was usurious, the amount paid as interest upon it was paid to the various parties above named who owned it. It is true, the various payments of interest on that loan were remitted to the Commerce Trust Company, but the record shows the 6 per cent. provided by the interest coupons attached to the principal note was, by that company, remitted to the holders of the principal note and, in that respect, it acted only as the agent of the various holders of the indebtedness. None of these items of interest having been paid to the Missouri State Life Insurance Company nor the General American Life Insurance Company could under the holdings of the courts of this state, properly be credited upon or considered as legal offsets to the indebtedness represented by the second loan held by them. Hamilton v. Bill, Tex.Civ.App., 90 S.W.2d 929; Ward v. Pace, Tex.Civ. App., 73 S.W.2d 959; General American Life Ins. Co. v. Hamor et al., Tex.Civ.App., 95 S.W.2d 975. In each of the three cited cases writ of error was refused by the Supreme Court. The law is settled in this state in accordance with the conclusion above expressed. Special issue No. 1 submitted to the jury sought a finding as to whether or not at the time of the execution of the notes and deeds of trust in consummation of the $50,000 loan it was the intention of the parties to renew the $30,000 loan which had theretofore been made. By appropriate assignments, appellants assail the action of the trial court in submitting this issue, claiming the same was immaterial and was not supported by the evidence. We sustain these assignments and hold that the question of the intention of the parties in reference to the two loans was immaterial and could not form the basis of a judgment in this case for the reasons above expressed.

A number of assignments of error complain of the judgment of the trial court in applying as credits upon the principal note of the second loan all amounts paid on that loan as interest, including the amounts paid to the Commerce Trust Company on the second lien notes, as well as the amounts paid to appellant Missouri State Life Insurance Company and General American Life Insurance Company, in discharge of the coupon interest notes attached to the principal note of $50,000. We think, under the doctrine announced in the cases above cited, these assignments are well taken and should be sustained.

Within a short time after the principal note and coupons attached thereto were executed the Commerce Farm Credit Company assigned them to Missouri State Life Insurance Company. The principal note, with its interest coupons, remained the property of the Missouri State Life Insurance Company until the 8th of September, 1933, after this suit was filed, when it was assigned to appellant General American Life Insurance Company who still is the owner and holder of it. The record shows that appellees paid to these appellants, and they received as interest on the $50,000 note, the sum of $32,572.48. The four notes and second deed of trust executed contemporaneously with the $50,000 note were given as part of the interest on the principal loan. The aggregate of these four notes represented 2½ per cent. of the interest for the entire period of ten years, but it was "squeezed" into four annual payments of $3,125 each. The interest coupons attached to the principal note were in the sum of $3,250 each, and they were payable annually over the entire

period of ten years. This arrangement required Ramp to pay a total each year for the first four years of $6,375 as interest on a loan of $50,000, which would be at the rate of approximately 13 per cent. during those years. This arrangement unquestionably made the transaction usurious and subjected appellants, the life insurance companies, to the consequences provided by law of collecting usurious interest. The rule is well established, however, that under such circumstances the Life Insurance Companies could not be charged with interest not collected or in any way appropriated by them. We sustain these assignments to the extent indicated and hold that the trial court erred in crediting the $50,000 note with the interest paid by appellee to the Commerce Trust Company on the second lien notes.

Appellants contend, in this connection, however, that the transaction is not usurious and the principal note of $50,000 should not be credited with the interest of $32,572.48 paid to the life insurance companies; claiming that this case is controlled by the holding of the Supreme Court in the case of Dugan et al. v. Lewis et al., 79 Tex. 246, 249, 14 S.W. 1024, 12 L.R.A. 93, 23 Am. St.Rep. 332. The decision in that case turned upon the construction of the acceleration clause in case of default contained in the deed of trust.

It is not necessary to resort to an interpretation of the accelerating clauses in either of the deeds of trust in this case to determine whether or not the contract was usurious. It is plainly expressed in the obligatory portions of the contract. Such contracts must be determined by the statutory limitation of 10 per cent. per annum for the use of the borrowed money for a term of one year. If the interest contracted to be paid exceeds that rate, the contract is usurious and the rule under which the courts must give to the contract a construction that will make it legal, if it be fairly susceptible of such construction, does not justify them in ignoring the very terms that have been adopted by the parties and which make the contract illegal under the provisions of the statute. Galveston & Houston Investment Co. v. Grymes, 94 Tex. 609, 613, 63 S.W. 860, 861, 64 S.W. 778; Shropshire v. Commerce Farm Credit Co., 124 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 84 A.L.R. 1269.

As opposed to the conclusion we have reached on this question, appellees call our attention to the case of Texas Farm Mortgage Co. v. Rowley, Tex.Civ.App., 98 S.W. 2d 854. That opinion was written by Chief Justice Dunklin of the Fort Worth Court of Civil Appeals, and the conclusions there reached are apparently in conflict with the holdings of the cases which we have cited as authority for our conclusions in this case. Indeed, in the opinion of the Court of Civil Appeals in the Rowley Case, Justice Dunklin states that the conclusions reached are apparently in conflict with the decisions in the Bill and Pace Cases which we have cited. The Supreme Court granted a. writ of error in the Rowley Case, and in the tentative opinion, upon the application for writ of error, said: "The C. C. A. erred in affirming the judgment of the trial court limiting the recovery of the plaintiff in error, the Travelers Insurance Company, by allowing the defendants in error credit for the payments made to the Texas Farm Mortgage Company on account of the commission note upon the principal of the note held by the plaintiff in error."

Regardless of the persuasive and logical reasoning upon which the Court of Civil Appeals based its holding, the Supreme Court, by refusing applications for writs of error, has approved the holdings of the Courts of Civil Appeals in the three cases which are apparently in conflict with it, and tentatively disapproved the conclusions reached by the Court of Civil Appeals in the Rowley Case. We are constrained to follow the course indicated by the higher tribunal, which necessarily results in the conclusion that, in this case, the trial court erred in allowing credit on the principal note of $50,000 held by the Life Insurance Company for any interest paid to Commerce Trust Company on the second lien notes.

The next contention made by appellants is that, if the contract evidenced by the two deeds of trust and various notes executed in consummation of the $50,000 loan were usurious, it was purged of that stigma by a new contract entered into between appellees and appellant Commerce Farm Credit Company on the 1st of February, 1925. The instrument referred to is in the form of, and designated as, a deed of trust. It purports to have been given to secure one note in the sum of $5,750 and six notes in the sum of $1,250 each, of even date, the first note bearing interest from date at the rate of 6 per cent. per annum and the remaining notes

bearing interest at the rate of 10 per cent. per annum from maturity, the first and second notes due on the 1st of February, 1926, and one due on February 1st of each' successive year until the 1st of February, 1931. The record shows that none of the four notes of $3,125 each, originally executed by appellees and secured by the second deed of trust, had been paid, and, when the instrument of February 1, 1925, was executed, the aggregate of those notes, including the interest accrued thereon, was calculated and the entire sum of principal and interest divided into the payments as represented by the latter series of seven notes. The only provision of the alleged purging instrument that could be construed as having the effect of purging the original transaction of usury is the last clause which reads as follows:

"This deed of trust is executed to secure my (our) indebtedness to the Commerce Farm Credit Company in the amount herein shown, which is admitted to be due to said Commerce Farm Credit Company, as a result of a complete settlement and adjustment of all matters between us in connection with the loan previously made me (us) and secured by liens on the property above described. All claim which I (we) might have had against said Company by reason of asserted and denied usurious charges has been settled and is hereby fully released. The lien hereby granted is to take up and carry forward the lien of a previous deed of trust, dated January 29th, 1921, and recorded in Vol. 11, Page 618 of the Deed of Trust Records of Hemphill County, Texas, and I (we) admit the lien of that deed of trust to be valid; the purpose of this deed of trust and the notes hereby secured being to extend the time for payment of the unpaid indebtedness as described in that deed of trust and carry forward the lien. The lien of the first deed of trust hereinabove mentioned is recognized as valid and subsisting and the debt thereby secured is recognized as valid and unpaid (except as to such principal or interest payments as may have been made) and the priority of the lien securing that debt over the lien of this deed of trust is admitted."

▮ It will be noted that the new contract makes no provision for the repayment to appellee of any interest theretofore paid by him, nor for any credit on the principal note for any amount theretofore paid as interest. The only provision in it which could be deemed a consideration moving to appellee for its execution is the one in which he is granted an extension of time in which to pay the amount of money represented by the four interest notes originally executed, including the interest then due thereon. Appellee was not redressed for any of the interest which he had theretofore paid. The new instrument expressly reaffirmed the validity of the second deed of trust executed on the 1st of February, 1921, to secure this identical debt and expressly extended the dates of maturity of the entire amount due on the four notes, including the interest due on them. We have held that the contract in its entirety as executed on February 1, 1921, was usurious. During the time intervening between the execution of the usurious contract and February 1, 1925, the date when the alleged purging agreement was executed, Ramp had paid on the indebtedness as interest the sum of approximately $13,000, evidenced by the coupons attached to the principal note. If the contract was usurious he was entitled to credit for that amount on the principal note at the time the alleged purging agreement was executed. In addition thereto, he was entitled to have the entire amount evidenced by the seven new notes canceled because they were executed as part of the interest on a usurious transaction and under the statute, article 5071, R.C.S., they were void. Instead of receiving these credits and benefits, however, the notes and all interest that had accrued at that time were included in the new series of notes. From this it will be seen that Ramp received no consideration for the execution of the alleged purging agreement other than the privilege of paying the usurious interest on dates different from those provided by the original notes. Being without consideration, it was voidable and of no force or effect.

▮ The new contract cannot, in our opinion, be justified in relation to a consideration based upon the theory that it was executed as a settlement of a bona fide controversy between the parties over the question of usury. Appellee had not paid any of the four $3,125 notes secured by the second deed of trust. They were all past due and the record shows he was anxious to avoid foreclosure proceedings. He wrote a number of letters to appellants,

the loan companies, which reveal his anxiety in this respect. In the correspondence between them nothing was said about the usurious character of the original contract. It all referred to the notes, the companies insisting upon their payment and appellee seeking more time in which to pay them. These negotiations finally resulted in the preparation by appellant Commerce Trust Company of the instrument executed on the 1st of February, 1925. The only thing shown by the record which indicates there was a dispute or controversy between appellee and the loan company with reference to usury is the statement of the witness Culbertson, who was vice-president of the Commerce Trust Company, that one Mr. Taylor told the witness in the fall of 1924 that the question of usury had been discussed between him and appellee Ramp. The nature of this discussion is not revealed and this hearsay statement is, in our opinion, not sufficient to establish the existence of any sort of controversy. Indeed, the alleged purging agreement does not contain any statement nor establish any basis for the conclusion that it was executed as a result of a controversy over the question of usury. Appellants state in their brief that in granting Ramp's request for an extension of time within which to pay the delinquent second lien interest commission notes, the question of possible usury was naturally considered because of the pendency at that time of the case of Shropshire v. Commerce Farm Credit Company, Tex.Civ.App., 266 S.W. 612. It is not shown, however, that Ramp knew anything about that case. Ramp denied the existence of any such controversy and testified positively he did not know the provision with reference to an adjustment of usurious interest was contained in the new contract. There is nothing in the record which indicates he was deprived of an opportunity to read the contract but the record amply justifies him in believing the instrument presented to him for execution was nothing more nor less than a rearrangement and extension of the four second lien notes and interest accrued thereon. He had made no demand upon appellants for repayment to him or credit upon the principal note because of the usurious character of the contract, of the interest theretofore paid. All of the antecedent correspondence and discussions between them had reference to an extension of the time in which to pay the second lien notes. In answer to special issues Nos. 8 and 9, the jury found that the Commerce Farm Credit Company, through its agents, obtained the signature of Ramp to the new contract by representing that the instrument was a renewal of the interest notes and nothing else, and that Ramp signed it, believing it to be such. There was ample evidence to support these findings and, for the reasons here discussed, as well as the absence of consideration in the contract itself, the new contract was, in our opinion, without force or effect and not binding upon the appellees. It purged the old contract of nothing. It was not a purging agreement at all. The old contract was usurious because it provided that, during the first four years of its existence, the debtor, Ramp, should pay more than 10 per cent per annum for the use of the money he had borrowed. All of the interest provided for in the original contract was usurious and, therefore, uncollectible. The provisions under which it should be paid were, by force of the statute, void. The new contract did not provide for the refunding of any of it nor eliminate any portion of it from Ramp's obligations to pay. It said, in effect, that "Although the interest provided for in the original contract is usurious and void, we shall make it valid by renewing it and extending it so that it will become due upon dates different from those provided in our original contract." This was merely changing the form and retaining the substance. It was still the same interest for which the original contract provided and the new contract did not change it. It was simply another agreement to pay the same usurious interest that had been provided in the original contract and bound the parties by two contracts instead of one. The effect would not have been different if the old notes had been extended by simply writing on the back of them an agreement to that effect. El Paso Building & Loan Ass'n v. Lane, 81 Tex. 369, 17 S.W. 77; International Building & Loan Ass'n v. Biering, 86 Tex. 476, 25 S.W. 622, 26 S.W. 39; Gibson v. Hicks, Tex.Civ.App., 47 S.W.2d 691, and authorities there cited; Ford et al. v. Glaze, Tex.Civ.App., 60 S.W.2d 898; People's Mut. Life Ass'n v. Martindale, Tex.Civ.App., 80 S.W.2d 484; Franklin Ins. Co. v. Villeneuve, 25 Tex.Civ.App. 356, 60 S.W. 1014.

Moreover, if the interest provided in the old contract were usurious and not collectible, then the new contract itself was usurious in its terms. The first note of the series of seven notes that were executed under the terms of the new contract was for the sum of $5,750, which included a por-

tion of the principal of the four interest notes and the accrued interest on all of them. This note matured one year from date and provided for interest from date at the rate of 6 per cent. per annum. The balance of the four original notes was divided into six notes of $1,250 each, due one to six years respectively after date, bearing interest from maturity at the rate of 10 per cent per annum. This entire sum represented interest that was provided by the original loan contract which was composed of the first and second deeds of trust, the $50,000 principal note, the ten coupons attached to it, and the four second lien notes of $3,125 each. The $5,750 note and the first of the six $1,250 notes matured on the 1st of February, 1926, making a total amount of interest to be paid on the $50,000 loan during that year under the new contract of $7,000. In addition, one of the $3,250 interest coupons attached to the principal note matured on the same day, February 1, 1926, making a grand total of $10,250, which, under the alleged purging contract, Ramp was obligated to pay as interest on the $50,000 loan during the twelve months following its date, February 1, 1925, which would be in excess of 20 per cent.

■ The Supreme Court, speaking through Justice Greenwood, in the case of Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 12, 84 A.L.R. 1269, said: "To determine the question of usury in a contract, it must be tried by the statutory limitation of 10 per cent. per annum for the use, forbearance, or detention of the money for one year. If the interest contracted for exceeds that rate, it constitutes usury, no matter in what form the contract may be expressed."

■ Tested by this sound and simple rule, there is no escape from the conclusion that the alleged purging contract of February 1, 1925, was itself usurious and did not have the effect of purging the original contract of the vice of usury contained in it. See, also, Lincoln Nat. Life Ins. Co. v. Anderson, Tex.Civ.App., 71 S.W.2d 555, reversed on other grounds 124 Tex. 556, 80 S.W.2d 294, 81 S.W.2d 1112; Wild v. Crum, 207 Ala. 132, 92 So. 252.

The next question presented pertains to a judgment that was rendered in cause No. 1783 in the district court of Hemphill county on August 30, 1924, in favor of the First National Bank of Canadian against George Gerlach, as principal, and appellee H. M.

Ramp, as surety, for the sum of $7,802.60, with interest at the rate of 10 per cent per annum and costs of suit. The judgment was purchased by appellant W. H. Potts for the use and benefit of Commerce Trust Company, and assigned to him by the bank on November 30, 1932, after this suit was filed by Ramp. The judgment in cause No. 1783 contains the provision that, upon the agreement of the parties, in open court, no execution shall issue until the expiration of 180 days, but that plaintiff shall be entitled to all other rights save and except the issuance of execution.

The jury found that no execution was issued on the judgment prior to March 1, 1926, which was a year, plus 180 days, after its rendition, and the record shows that no effort was made to collect it until December 3, 1932, when an execution issued. On the 4th of February, 1933, which was after this suit was filed, the district judge granted a temporary injunction prohibiting the sheriff from selling appellee's lands under the execution, and the temporary injunction remained in force until the final judgment was rendered in this case.

Appellants Potts and the Commerce Trust Company filed answers asserting the validity of the judgment, but praying in the alternative that, if it were dormant, judgment reviving it be entered by the court in this case. Potts' answer was filed December 5, 1934, and the Commerce Trust Company's answer was filed February 22, 1935. The trial court canceled the judgment and permanently enjoined appellants Potts and Commerce Trust Company from proceeding in any manner to collect it under legal process, and this action of the court is assigned as error.

■ Article 3773 of the Revised Civil Statutes (1925) as it then existed provided that, if no execution should issue upon the judgment within twelve months, the judgment became dormant and no execution should issue thereon unless the judgment should be revived. Appellees assert that the provision in the judgment staying the execution for 180 days did not relieve appellants of the necessity of having an execution issued within twelve months from the entry of the judgment in order to prevent its becoming dormant, and in this we think they are correct. The judgment became a final judgment when it was rendered by the court. All matters at issue in the case were determined and there was nothing left for the court to do. The stay

order contained in it, entered upon agreement of the parties in open court, did not deprive it of its finality in character. Gaston v. Boyd, 52 Tex. 282; State v. Downing, 40 Or. 309, 58 P. 863, 66 P. 917; Doidge v. Steamship Co., 1 Cir., 19 F.2d 500. By agreeing to the stay of 180 days, the plaintiff in the case agreed to forego six months of the twelve months given it by the statute in which to have an execution issued, and this it had the right to do. An execution was issued on December 3, 1932, levy and sale under which was prevented by a temporary injunction on February 4, 1933. The judgment was dormant at the time the execution was issued and its issuance did not have the effect of reviving it. Patton v. Crisp et al., Tex.Civ.App., 11 S.W.2d 826. But appellants contend the temporary injunction interrupted the running of the statute of limitation on the judgment and that the time intervening between the issuance of the injunction and the final judgment rendered by the trial court in this case should not be counted. The contention is not tenable for the reason that the injunction applied only to the execution that was then in the hands of the sheriff. The levy was properly restrained because the execution was not properly issued and was voidable. Hill v. Newman, 67 Tex. 265, 3 S.W. 271; Spiller v. Hollinger, Tex.Civ.App., 148 S.W. 338. The injunction did not restrain the plaintiff in the judgment from filing an application to revive it as provided by the statute and that was the only right it had at that time. No such application was filed until appellant W. H. Potts filed his answer in this cause on December 5, 1934, which was more than ten years after the entry of the judgment, and the judgment being barred by the statute of limitation at that time, article 5532, R.C.S.1925, he was not entitled to the relief. The article just mentioned provides, in effect, that, if no execution is issued within twelve months after the rendition of the judgment, it may be revived by scire facias or an action of debt thereon within ten years after the date of the judgment, and not afterwards. Under the record in this case, no valid execution was issued on the judgment

within ten years after its rendition and, during nine of that ten years, it was dormant. The plaintiff in judgment not having filed an application for its revival by scire facias nor filed an action of debt upon it within ten years from its date, the judgment became barred by limitation on the 30th of August, 1934, and could not be revived under pleadings filed by W. H. Potts on December 5th thereafter nor those of the Commerce Trust Company, filed on February 22, 1935. All of the appellants' assignments of error complaining of the action of the trial court in canceling the judgment are, therefore, overruled.

■ Under a number of assignments of error appellants complain of the action of the trial court in making comments upon exceptions and various statements made in the presence of the jury during the trial. We have examined all of these assignments of error and, in our opinion, none of them shows any merit. The record does not show appellant was in any manner damaged by the remarks of the court, and we do not believe they amount to more than may be expected during the progress of a trial extending over a period of several weeks. These assignments are overruled.

The provisions of the judgment of the court below canceling and annulling the principal note or bond will be reversed and judgment here rendered against appellee H. M. Ramp in favor of the General American Life Insurance Company for the balance due thereon after crediting payments of interest made thereon by appellee in the sum of $32,572.48, with 10 per cent attorneys' fees, with interest on the entire amount so recovered from February 1, 1931, at the rate of 6 per cent per annum; also for all amounts advanced and paid by appellant as taxes, with interest from the respective dates of payment thereof at the rate of 6 per cent per annum. One-half of the costs incurred by reason of this appeal will be adjudged against appellee, and the remaining one-half against appellant Commerce Trust Company. In all other respects the judgment of the trial court is affirmed.