Washington **WILLIAMS** et al., Appellants,

v.

Thomas W. **MASTERSON** et al., Appellees.

No. 13095.

Court of Civil Appeals of Texas. Houston.

Sept. 26, 1957.

Rehearing Denied Oct. 24, 1957.

J. Leonard Gotsdiner and P. Harvey, Houston, for appellants.

Enlow, Kee & Thomas and Wiley **B.** Thomas, Angleton, for appellees.

GANNON, Chief Justice.

This is an appeal from an order of the District Court of Brazoria County made in cause No. 20,469, styled Thomas W. Masterson et al. v. Washington Williams et al., on September 17, 1956, denying an application of the appellants, Phillip and Louise Williams, Hillery and Louisa Williams, Emanuel and Marie Henderson, Barney and Melvina Williams, Hearl Williams and Gentral Henderson, praying for a temporary nonmandatory injunction to operate in futuro.

The record shows the following:

Cause No. 20,469, styled Thomas W. Masterson et al. v. Washington Williams et al., was instituted prior to March 1, 1941. It was an action of trespass-to-try-title involving 552½ acres of land. On March 1, 1941, a final judgment was rendered in the case by agreement. The judgment decreed that the plaintiffs recover out of said 552½ acres of land 377½ acres and that the defendants recover the remaining 175 acres. The decree taxed costs against the parties respectively in proportion to the acreage recovered by them and provided "in the full enforcement of all provisions of this decree, appropriate process or writs may issue as often and as many times as may be necessary."

For a period of over fifteen years and up to and including the 3rd day of August, 1956, no execution, writ of possession or other process issued on the judgment. On August 3, 1956, the appellees, H. M. Martin et al., filed an ex parte application to be substituted as parties-plaintiff in the case and prayed that the judgment entered on March 1, 1941, be revived in their favor and that the court direct the clerk to issue a writ of possession for the purpose of placing the substituted plaintiffs in possession according to their interests in the land award-

ed to plaintiffs by the judgment of March 1, 1941. The movants alleged themselves to be successors to the title of the original plaintiffs; that the defendants in the original suit were in possession of a portion of the lands decreed to plaintiffs by the judgment in the cause, and that the applicants, as substituted plaintiffs, were entitled to a writ of possession to evict the defendants from that part of the land awarded plaintiffs. No notice or rule to show cause on this application was ever issued to or served upon any defendant in the original suit or on any of the appellants who were the defendants in the original suit, or their successors in interest. At an ex parte hearing on the same day the application was filed it was granted as prayed; the applicants were "substituted as parties-plaintiff for the original plaintiffs";—"The original judgment * * * [was] in all things revived in favor of and for the benefit of said substituted plaintiffs" and the clerk was ordered to "issue a scire facias writ of possession directing the Sheriff of Brazoria County, Texas, to place the [substituted plaintiffs] in possession of the respective tracts of land [claimed by them] and to evict the defendants from the possession thereof * * *." On the same day, August 3, 1956, the clerk issued the "scire facias" writ of possession and the same was placed in the hands of the sheriff on August 4, 1956. The writ of possession contained a further direction to the sheriff to make of the property of the defendants the sum of $9.20 costs of suit and the further costs of executing the writ.

The officer's return on the writ shows that it came to hand on the 4th day of August, 1956, at 11:00 o'clock A.M. and that it was executed on the 27th day of August, 1956, at 11:00 o'clock A.M. "by serving Hearl Williams" and by placing representatives of the substituted plaintiffs in possession of the property, as directed in the ex parte order of August 3, 1956.

Nine days after the officer executed the writ and placed the substituted plaintiffs in possession, and on September 5, 1956, Hearl Williams, Hillery Williams, Barney Williams and Gentral Henderson filed an application with the court in the original suit, No. 20,469, for a temporary restraining order enjoining and restraining the sheriff from "carrying out the provisions of the scire facias writ of possession" which had issued out of the court on August 3, 1956. The original application for injunction does not appear in the transcript, but the citation issued on it does, and this directs the sheriff to appear and show cause on September 7, 1956, why a temporary injunction should not be granted. Presumably, a temporary restraining order was granted and continued in effect until September 17, 1956, for on that day there was filed by the appellants a first amended original petition in cause No. 20,-469, and on the same day the substituted plaintiffs and J. W. Marshall, Sheriff of Brazoria County, filed their answer to the application for temporary injunction. After a hearing on the application for temporary injunction, had on the same day, September 17, 1956, the temporary restraining order granted on September 6, 1956, was dissolved and the application for temporary injunction was denied. The amended petition for injunction is verified by the applicant, Hearl Williams. Anachronously, anomalously and inexplicably, the petition chose to ignore the fact that the writ of possession had been fully executed prior to the date of its filing and, after alleging the issuance of the writ of possession on the 3rd day of August, 1956, proceeds to plead that the writ "is now in the hands of the Sheriff of Brazoria County, Texas" who "has informed the applicants that he *will* carry out its provisions". There are other allegations of threats by the sheriff to execute the writ and that "*in the event* the Sheriff of Brazoria County, Texas, will comply with the provisions" of the writ the applicants will suffer monetary damage. (Emphases ours.)

The basis of the application is the alleged threatened action of the sheriff and the

dormancy of the judgment, under Art. 3773, Vernon's Ann.Tex.Civ.St., and that the judgment is not subject to revival, being barred by Art. 5532, V.A.T.S., barring revival of judgments unless scire facias or action of debt be brought thereon within ten years after rendition. There are appropriate allegations that for the period of time somewhat in excess of fifteen years intervening between March 1, 1941, the date of rendition of the original judgment in the cause, and August 3, 1956, the date of the issuance of the so-called "scire facias" writ of possession, no process ever issued upon said judgment. That is undisputed. It is also undisputed that under the statute Art. 3773 no process having been issued thereon within ten years, on August 3, 1956, the judgment was dormant. It was also pleaded that the order reviving the judgment and directing the issuance of the writ was void for want of procedural due process, no notice thereof or hearing thereon having been afforded applicants.

The prayer of the petition for injunction is that the order of August 3, 1956, be set aside; that the "scire facias" writ of possession be set aside, rescinded and held for nought; that the original judgment of March 1, 1941, be declared dormant; that a temporary restraining order be issued —terms thereof not specified; that upon a later hearing the restraining order and injunction be made permanent, and that the sheriff and the substituted plaintiffs "be enjoined and restrained from complying with the provisions of the scire facias writ of possession". There is an alternative prayer for a money judgment by way of damages in the sum of $5,000.00, and for such other "rights" to which the applicants may be justly entitled.

As stated, the application came on for hearing on September 17, 1956, the substituted plaintiffs having appeared and responded thereto. The application was treated as one for a *temporary* injunction. At the hearing evidence was introduced. This confirmed the sheriff's return on the writ of possession, and showed that the applicant Hearl Williams had been dispossessed by the Sheriff on August 27, 1956, and the substituted plaintiffs placed in exclusive possession by him through their representatives. The order appealed from, which was made after hearing, denied the application "for temporary injunction" and dissolved the temporary restraining order theretofore issued on September 6, 1956. The answer of the substituted plaintiffs to the application for temporary injunction specifically relies, among other things, on the fact that the writ of possession issued on August 3, 1956, had been fully executed by the Sheriff of Brazoria County on the 27th day of August, 1956.

We are asked to reverse the judgment for the following reasons: (a) Because when the "scire facias" writ of possession was issued the judgment was dormant, since no process was issued on the original judgment of March 1, 1941, within ten years, it being claimed that the eviction of the appellants was therefore wrongful. (b) On the claim that when the ex parte revival order was made, the same was erroneous because the application therefor was brought more than ten years after the date of judgment and barred by Art. 5532, V.A.T.S., and (c) Because the revival order was void for want of jurisdiction of the person of appellants. We do not understand appellants claim any equities in themselves—that is to say, any title to the land from which they were evicted or any actual right to the possession thereof. On the other hand, appellants seem to rely solely on legally irregular disseizin consisting of dispossession on a writ issued on a legally dormant judgment.

■ We have no doubt that in Texas the statutory term "execution" includes writs of possession which, under our law, may include an order to the sheriff, in addition to the direction to place a successful party to a land action in possession, to make on execution any damages or costs of suit that may be awarded the successful party. See Rule 622, Texas Rules of Civil Pro-

cedure, defining an execution as a "process of the court from which it is issued"; Rule 629 providing that executions shall direct the officer to make the costs which have been adjudged against the defendant in execution and the further costs of executing the writ, and Rule 632 specifically and expressly referring to writs of possession of real property as executions. See also former Art. 3783, Subd. 4, from which in part the rules referred to are taken. In Eason v. David, Tex.Civ.App. Beaumont, 232 S.W.2d 427, 432, the court stated that, "The word *execution* in Article 3773 should be construed as including said writ of possession." The writ there involved was a writ of possession issued under a tax judgment.

■ It is true, we think, that the strict legal right of the appellees to the issuance of a writ of possession on the judgment involved is subject to the provisions of Art. 3773 under which the judgment in question here was clearly dormant on August 3, 1956, and that their right to revive the judgment is subject to the limitation provided by Art. 5532 barring actions to revive judgments ten years after date thereof. But it does not follow that the writ of possession actually issued by the clerk was void, even though it be conceded, as we think is correct, that the order of revival of August 3, 1956, was void for want of jurisdiction of the person of the appellants. It is apparently well established that an execution or writ of possession issued on a dormant judgment is not void, but merely voidable, so that a purchaser at an execution sale under such a judgment takes a valid title. Hill v. Neuman, 67 Tex. 265, 3 S.W. 271; Commerce Farm Credit Co. v. Ramp, Tex.Civ.App., 116 S.W.2d 1144, affirmed Commerce Trust Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531; Benson v. Greenville Nat. Exch. Bank, Tex. Civ.App., 253 S.W.2d 918, and, see 18 Tex. Jur., title Executions, Sec. 38, page 576, where, after quoting Art. 3773, it is said, "It follows that a dormant judgment does not authorize the issuance of an execution. But a writ issued under a dormant judg-

ment is not void or subject to collateral attack. It is sufficient until set aside to empower the sheriff to sell property and pass title to the purchaser."

■ The situation revealed by this record is an unusual one. The order which we are asked to reverse is one refusing a temporary injunction to operate in futuro but against past action. The pleading upon which the order was made, by necessary implication, excludes the idea that applicants were seeking a writ of restitution. According to the averments thereof in relation to which the prayer of the applicants is to be construed, the applicants remained in possession and there was only a threat of their being dispossessed under the writ. The fact, firmly established at the hearing, that the writ had been fully executed prior to the filing of the application, cannot aid the appellants since it demonstrates that the relief for which they prayed was impossible to grant. At the time of the hearing all questions raised by their pleadings were moot and equity was powerless to act through restraining order, as prayed for by appellants. This is too well established to require extensive citation of authority, but see Bell v. Ditmore, Tex.Civ.App., 38 S.W. 2d 397. A restraining order is not the remedy for a completed wrong—a fait accompli. Since the only complaint on appeal is of the action of the trial court in refusing to grant a temporary restraining injunction order operating in futuro to restrain the execution of the writ of possession, we are unable to see any error in the interlocutory judgment appealed from. The case, of course, might be different had plaintiff, after alleging facts showing a completed wrong, sought by the prayer of the petition to have it righted through relief within the power of the court to grant, whether denominated as restitution, mandatory injunction, or otherwise. But this is not the case before us.

■ The pleadings of appellants do not in anywise go out to the question of title or rightful possession, but are re-

stricted solely to the question of irregular dispossession. We express no opinion on the right of appellants at this time to try out the right of possession in a legal action of forcible entry and detainer or to apply to the District Court for a writ of restitution. Though we have not been pointed to any provision in our statutes or rules and know of none expressly authorizing the issuance of writs of restitution, we are nevertheless inclined to the view that the power to issue such writs is inherent in the equitable jurisdiction of our courts—though it would appear that such writs are not obtainable as a matter of right upon a showing of mere irregularity in the issuance of writs of possession but, as a matter of justice only. See 18 Amer.Jur., Ejectment, Sec. 146, page 116, where it is said:

"The current of authority in this country and in England seems to be that the right to award the writ of restitution in cases not falling within any express statute authorizing such writs arises, by equitable construction by the courts, to prevent injury to a party who has been wrongfully dispossessed of the premises, and that the writ is not demandable as a matter of right, but as a matter of justice only and will not be granted where there is any question as to the facts."

and Bowar v. Chicago W. D. R. Co., 136 Ill. 101, 26 N.E. 702, 704, 12 L.R.A. 81, stating that, "Upon an application, as here, for a writ of restitution, it is not demandable as a matter of right, but as a matter of justice only. Watson v. Trustees, 2 Jones, Law, N.C., 211; Perry v. Tupper, 70 N.C. 538; Doe v. Shail, 13 Law J.Q.B. 321." In the same case, apparently referring to the rule that writs of restitution will issue as a matter of justice only, the court observes that it has been referred to no case where a writ of restitution was granted "merely because the possession was obtained under irregular process" since the plaintiff in judgment having recovered, he had a right of entry *without the writ*. In that case, the court said further:

"Finding the property unoccupied, the successful party may enter peacefully into possession, but he may not enter with force, and such possession would not be disturbed by writ of restitution while the judgment remained in full force and effect. If it be conceded that the writ of possession was irregularly issued, the same, being regular on its face and upon a valid judgment, would protect the officer in its execution, and the plaintiff would be in no worse position than if he had entered without process. It follows that we are of the opinion that, if the court below was in error in not quashing the writ of possession, it is an error which cannot avail appellant against the force and effect of appellee's judgment."

■ It is abundantly plain that any equitable remedy in the nature of a restraining order which may at any time have been open to plaintiff was moot as of the time of the filing of appellants' application for temporary injunction as well as at the time of the hearing in the trial court and that the trial court correctly dissolved the ineffectual restraining order theretofore granted, and correctly refused the temporary injunction prayed for to restrain the doing of that which had already been done. However, had it appeared on the hearing that the writ had not actually been executed but that it remained in the hands of the sheriff threatening to execute it, still it would be doubtful that appellants would be entitled to reversal of the order denying the temporary injunction. The remedy which they sought, no matter how broad a view may be taken of the prayer—in fact, even if a prayer for a writ of restitution had been included—was strictly equitable, and appellants failed to allege any equities in themselves such as a legal title or just right of possession. Equity will not oust a just possession merely because of legal irregularity in obtaining it.

The order appealed from is affirmed.

**158**

PER CURIAM.

The foregoing opinion was prepared by our late lamented Chief Justice GANNON, and was by the full Court approved prior to his untimely death. The Court adopts the opinion as the opinion of the Court.