**Opinion issued July 24, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00706-CV
_____

**STEPHEN J. HARPER, Appellant**

**V.**

**SPENCER & ASSOCIATES, P.C., Appellee**

---

**On Appeal from the County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 709957**

---

## O P I N I O N

Stephen J. Harper appeals the trial court's order granting Spencer's motion for scire facias to revive a dormant judgment against Harper. Harper contends that the August 2001 writ of garnishment issued by the trial court was not a "writ of

execution" that extended the enforceability of the judgment for an additional ten years beyond the date of the writ's issuance and that, as a result, the judgment had been dormant for more than ten years and could not be revived. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(b) (West 2008). We hold that the writ of garnishment qualifies as a writ of execution for purposes of section 34.001(b); we therefore affirm.

## Background

During the 1990's, Spencer provided legal services to Seven Oaks Farms, Ltd. and Harper, both individually and in his capacity as president of Seven Oaks. When Harper failed to pay the fees owed for the representation, Spencer sued for breach of contract. Spencer prevailed. In 1999, the trial court signed a judgment awarding him $33,237.28 plus ten percent annual interest, court costs, and $5,000 in attorney's fees in this case (Case Number 709,957) (the original judgment).

This appeal is from one of several actions Spencer has filed in Harris County Court Number One in an effort to collect on the original judgment, to no avail. In addition to other debt collection actions, Spencer sued in Harris County Civil Court at Law Number One for two charging orders. The first sought a charging order against Stephen Harper individually, the Steve J. Harper Family Limited Partnership, and ZO Resources—entities that Spencer learned, through post-judgment discovery, in which Harper had membership or ownership interests. In

2

that action (Case Number 741,179) the trial court granted the charging order in March 2001. It also sanctioned Harper for post-judgment discovery violations in connection with Spencer's efforts to collect on the original judgment, requiring payment of $3,000 as reimbursement for the attorney's fees that Spencer incurred in the discovery dispute.

Spencer procured the second charging order against Steve J. Harper Family Limited Partnership, also in March 2001, under Cause Number 741,775. This charging order sanctioned Harper's post-judgment discovery conduct, awarding Spencer $3,000 in additional attorney's fees.

The revival dispute forming the basis of this appeal centers on a writ of garnishment issued to Spencer in October 2001 under Case Number 709,957-801; thus, a writ in an ancillary action related to the original suit. The writ named Broadway Bank as garnishee. Referencing the first charging order, Spencer sought to garnish an account held in the name of ZO Resources. The trial court granted the application; the constable executed the writ. In June 2002, the parties and the trial court signed an agreed judgment providing that ZO Resources owed Spencer $3,354.25; the order required the bank to deliver that amount to Spencer.

In July 2013, Spencer sought the appointment of a receiver to aid in collection on the original judgment against Harper. When Harper responded that the judgment had become dormant, Spencer, based on the writ of garnishment,

3

applied for scire facias to revive the judgment. The trial court granted the requested relief.

**Discussion**

Harper contends that the trial court erred in reviving the judgment because it had been dormant for more than twelve years; in particular, he challenges the trial trial court's implicit finding that the October 2001 writ of garnishment action involving Broadway Bank qualified as a "writ of execution," sufficient to revive the judgment under Texas law.

*Applicable law and standard of review*

Chapter 34 of the Civil Practice and Remedies Code, governing the execution of judgments, provides: "If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record . . . , the judgment is dormant and execution may not be issued on the judgment unless it is revived." TEX. CIV. PRAC. & REM. CODE § 34.001(a). Thereafter, a judgment creditor may renew it "indefinitely by having a writ of execution issued within ten years of the previous writ" to prevent the judgment from becoming dormant. *Cadle Co. v. Fahoum*, No. 2-06-459-CV, 2008 WL 754992, at *2 (Tex. App.—Fort Worth Mar. 20, 2008, no pet.) (mem. op.); *see* TEX. R. CIV. P. 34.001(b).

Once it becomes dormant, a judgment can be "revived" by a petition for writ of scire facias or an action of debt. A creditor must bring either type of action no

4

later than two years after the judgment becomes dormant. *Id.* § 31.006. Section 31.006 has the effect of creating a twelve-year residual limitations period for final judgments. *Burnett-Dunham v. Spurgin*, 245 S.W.3d 14, 17 (Tex. App.—Dallas 2007, pet. denied); *Longhurst v. Clark*, No. 01-07-00226-CV, 2008 WL 3876175, at *2 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, no pet.) (mem. op.).

In determining whether to revive a dormant judgment, a trial court considers the date of the judgment, evidence of any writs of execution issued on the judgment, and the date of the motion to revive. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.006; *Cadle Co. v. Rollins*, No. 01-09-00165-CV, 2010 WL 670561, at *2 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.); *see also Trad v. Colonial Coins, Inc.*, No. 14-02-00172-CV, 2003 WL 124680, at *2 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op.) (stating that because appellant timely filed motion for scire facias, the judgment "should be revived," and indicating that revival of judgment is not discretionary if statutory requirements to revive dormant judgment are satisfied).

Whether the writ of garnishment executed on Broadway Bank to recover assets held in an account by ZO Resources satisfies the statutory requirement of a writ of execution issued on the original judgment is a question of law we review de novo. *See Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 635 (Tex. 2010).

5

*Defining a "writ of execution"*

Harper first contends that a writ of garnishment action does not qualify as a "writ of execution" for purposes of extending the life of a judgment. Thus, we first consider whether Chapter 34's reference to a "writ of execution" encompasses a writ of garnishment. Our rules of civil procedure define "an execution" as

> a process of the court from which it is issued. The clerk of the district or county court or the justice of the peace, as the case may be, shall tax the costs in every case in which a final judgment has been rendered and shall issue execution to enforce such judgment and collect such costs . . . [J]udgments of the district, county, and justice courts shall be enforced by execution or other appropriate process. Such execution or other process shall be returnable in thirty, sixty, or ninety days as requested by the plaintiff, his agent or attorney.

TEX. R. CIV. P. 621, 622. The rules thus define an execution as a process, issued by a court, executed through a Texas sheriff or constable or other appropriate means for purposes of collecting on a judgment. TEX. R. CIV. P 629.

Garnishment is one means of collecting on a judgment. It is a statutory remedy available to a judgment debtor against a third party who is in possession of the judgment debtor's nonexempt personal property. *See Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992); *Bank One, N.A. v. Wohlfahrt*, 193 S.W.3d 190, 194 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see generally* TEX. R. CIV. P. 657–679; TEX. CIV. PRAC. & REM. CODE ANN. § 63.001. Upon service of the writ of garnishment, assets of the judgment debtor in the possession of the garnishee are brought "within the control of the court."

6

*Tex. Commerce Bank-New Braunfels, N.A. v. Townsend*, 786 S.W.2d 53, 55 (Tex. App.—Austin 1990, writ denied). Service of the writ of garnishment creates a lien on the judgment debtor's property, impounding the funds in the hands of the garnishee bank. *Rome Indus., Inc. v. Intsel Sw.*, 683 S.W.2d 777, 779 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Through strict compliance with the garnishment statutes, a plaintiff in garnishment steps into the shoes of his debtor as against the garnishee, and may enforce, as against the garnishee, any rights the debtor could have enforced against the garnishee directly. *Rowley v. Lake Area Nat'l Bank*, 976 S.W.2d 715, 718–19 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Baytown State Bank v. Nimmons*, 904 S.W.2d 902 (Tex. App.— Houston [1st Dist.] 1995, writ denied); *see Beggs v. Fite*, 106 S.W.2d 1039, 1042 (Tex. 1937).

The Finance Code governs the writ of garnishment issued in this case. *See* TEX. FIN. CODE ANN. § 59.008 (West 2013). A bank will comply with a writ of garnishment without requiring formal execution, unless the judgment debtor-customer seeks to block the bank's compliance with the garnishment judgment. *See* TEX. FIN. CODE ANN. § 59.008(c) (explaining that "[t]he customer bears the burden of preventing or limiting a financial institution's compliance with or response to a claim made subject to this section by seeking an appropriate remedy, including a restraining order, injunction, protective order, or other remedy, to

7

prevent or suspend the financial institution's response to a claim against the customer"). Neither Harper nor ZO Resources opposed the writ of garnishment; the trial court signed an agreed judgment ordering the Bank to pay Spencer the funds available in ZO Resources' account.

Harper contends that the writ of garnishment is not a "writ of execution" as the statue requires for extending the life of a judgment. He relies on *Shields v. Stark*, 51 S.W. 540 (Tex. Civ. App.—Fort Worth 1899, no writ), to support his position. Significantly, Shields predates the enactment of the Texas Rules of Civil Procedure, including Rule 622's definition of execution as a judicial process directing the enforcement of a judgment. See TEX. R. CIV. P. 622. *Shields* involved an 1885 judgment rendered against J.T. Walters's wife, which Stark had obtained through an assignment in 1896. *Id.* at 540. When Stark sued to recover on the judgment, Shields responded that the judgment was dormant. *Id.* The trial court concluded that a writ of garnishment, issued in 1895, kept the judgment from becoming dormant, but the court of appeals disagreed. *Id.* It held that the writ of garnishment was not "in any sense an execution" and the record showed no judgment or execution in the garnishment suit; as a result, the court of appeals concluded that Stark did not demonstrate any action in furtherance of collecting on the original judgment. *Id.*

8

We disagree that the analysis in *Stark* applies in the present case. Unlike *Stark*, the record in this case shows that the trial court granted the writ and the garnishment order was executed. And, under our modern rules, a "writ of execution" as used in context, can be read to encompass multiple specific forms of judicial enforcement of a judgment. As the Eastland Court of Appeals observed in *In re V.R.N.*, Texas courts have held that a variety of judgment collection activities may revive a judgment. 188 S.W.3d 835, 837 & n.1 (Tex. App.—Eastland 2006, pet. denied); *see*, *e.g.*, *Williams v. Masterson*, 306 S.W.2d 152, 155–56 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.) (holding that section 34.001's predecessor included writs of possession within the statutory term "execution"); *Swafford v. Holman*, 446 S.W.2d 75, 80 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.) (order of sale); *Grissom v. F.W. Heitmann Co.*, 130 S.W.2d 1054, 1056–57 (Tex. Civ. App.—Galveston 1939, writ ref'd) (alias execution); *Ludtke v. Bankers' Trust Co.*, 251 S.W. 600, 604 (Tex. Civ. App.—Galveston 1922, writ ref'd) (writ of venditioni exponas). We hold that the writ of garnishment in this case satisfies the statutory requirement that it be a writ of execution.

### Relation to the original judgment

Harper next complains that, because the writ of garnishment refers to the attorney's fees awarded in the first charging order and not expressly to the funds awarded in the original judgment, which was designated with a different cause

9

number, Spencer cannot revive the original judgment. We disagree. First, the attorney's-fee award in the first charging order resulted from Harper's obstructive behavior in response to Spencer's efforts to collect on the original judgment. It was part and parcel of Spencer's collection efforts on the original judgment. Second, the proof supporting the writ of garnishment traced the garnished funds to Harper, the judgment debtor in the original judgment. That the assets only satisfied some of the attorney's fees that Spencer incurred in post-judgment discovery, and were insufficient to discharge the original judgment debt itself, does not sever the garnishment's connection to the original judgment, from which all liability for the judgment and post-judgment attorney's fees arose. We hold that the record supports the trial court's determination that the garnishment action was executed in furtherance of collection of the underlying judgment.

Once Spencer executed the writ of garnishment on assets belonging to Harper, Spencer was not required to undertake the further exercise of obtaining a writ of execution directly against Harper to keep the original judgment from becoming dormant. *See Kelly v. Gibbs*, 19 S.W. 563, 564 (Tex. 1892) (reasoning that garnishment is just a method of enforcing execution); *Baca v. Hoover, Bax, & Shearer*, 823 S.W.2d 734, 740 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (same). Accordingly, we reject Harper's contention that the trial court erred in reviving the original judgment.

10

## Conclusion

The trial court properly revived the dormant judgment. We therefore affirm the order of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.