In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-19-00279-CV**

**BBX OPERATING, LLC, Appellant**

**V.**

**AMERICAN FLUORITE, INC., GEOSOUTHERN ENERGY PARTNERS, LP, GEOSOUTHERN ENERGY CORP., and COMPASS BANK D/B/A BBVA COMPASS, Appellees**

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 36735**

**MEMORANDUM OPINION**

BBX Operating, LLC appeals the trial court's Final Judgment in favor of American Fluorite, Inc., GeoSouthern Energy Partners, LP, and GeoSouthern Energy Corp. (collectively, "GeoSouthern") garnishing the total amount of $2,436,547.65 from a BBX Compass Bank account. In one issue BBX asks whether the trial court erred by issuing final judgment for garnishment along with underlying

1

writs and orders where GeoSouthern failed to show entitlement to garnishment under Texas Law. For the following reasons, we will affirm.

## Background

The litigation giving rise to this appeal involves a protracted dispute over the payment of oil and gas revenues by former operator, BBX, to working interest owner, GeoSouthern. In companion case number 09-19-00278-CV, GeoSouthern sued BBX for payment of these revenues asserting a claim for breach of contract, a Texas Natural Resource Code claim, and seeking declaratory judgment for enforcement of a Rule 11 Agreement and interpretation of the parties' various joint development agreements. In that case, the trial court granted two partial motions for summary judgment, followed by a third and final summary judgment, which incorporated its prior partial summary judgment orders. Before final resolution of the companion case, GeoSouthern filed two verified prejudgment applications for writs of garnishment pursuant to Texas Civil Practice and Remedies Code section 63.001 against a BBX Compass Bank account holding the oil and gas revenues.

**First Verified Application for Pre-Judgment Writ of Garnishment**

On October 5, 2017, prior to entry of a final judgment in the companion case, GeoSouthern filed its first "Verified Application for Pre-Judgment Writ of Garnishment of Revenue Funds Held by BBX as Former Operator in BBVA Compass Revenue Account" seeking to garnish $1,714,547 in collected but unpaid

oil and gas revenues from certain oil and gas wells in which GeoSouthern owned a working interest. In that application, GeoSouthern asserted that the amount was (1) "liquidated, just, due, and unpaid[,]" (2) that within GeoSouthern's "knowledge and after reasonable inquiry, [BBX] possesses property in Texas, but does not possess such property in Texas subject to execution that is sufficient to satisfy the liquidated amount owed[,]" and (3) GeoSouthern was "not seeking to injure or harass [Compass Bank] or [BBX] by applying for a writ of garnishment." GeoSouthern supported its first application with an affidavit of GeoSouthern's General Land Manager Doug Dahmann and deposition testimony from BBX Corporate Representative John Gaines. Specifically, Gaines testified that through July 2017, after netting GeoSouthern's joint-interest billing amounts owed to BBX by GeoSouthern, BBX owed to and withheld from GeoSouthern revenue amounts totaling $1,714,547. Additionally, GeoSouthern included the trial court's first partial summary judgment order declaring that BBX was indebted to GeoSouthern for that amount for revenues collected by BBX but withheld from payment to GeoSouthern for the time period from October 2016 through July 2017. The trial court signed the first "Order for Issuance of Prejudgment Writ of Garnishment" for the requested amount in the Compass Bank account.

In response, BBX moved to dissolve the prejudgment writ of garnishment. In its motion to dissolve, BBX argued that: (1) Texas law prohibited the issuance of

3

writs of garnishment on judgments that are not final, and the partial summary judgment order made the basis of the application was not final; and (2) GeoSouthern failed to meet its burden for providing specific grounds and facts justifying the writ. GeoSouthern countered the motion to dissolve, asserting that a "prejudgment writ of garnishment" by its very name does not require a final judgment and that it followed the procedures outlined by Texas Rule of Civil Procedure 658. Ultimately, the trial court denied BBX's motion to dissolve.

**Second Application for Pre-Judgment Writ of Garnishment**

On April 25, 2018, GeoSouthern filed its "Verified Application for Second Pre-Judgment Writ of Garnishment of Revenue Funds Held by BBX as Former Operator in BBVA Compass Revenue Account," pursuant to Texas Civil Practice and Remedies Code section 63.001. GeoSouthern sought to garnish an additional $722,000 based on testimony John Gaines provided in a bankruptcy hearing pertaining to a BBX-related entity, Trinity River Resources. GeoSouthern again asserted the amount was (1) "liquidated, just, due, and unpaid[,]" (2) that "[w]ithin [GeoSouthern's] knowledge, [BBX] does not possess property in Texas subject to execution sufficient to satisfy the debt[,]" and (3) it is "not seeking to injure or harass [Compass Bank] or [BBX] by applying for a [second and additional] writ of garnishment."

4

In support of its second application, GeoSouthern included BBX Corporate Representative John Gaines's testimony from a bankruptcy hearing, the deposition testimony of BBX Accountant Laurel Vance, the first partial summary judgment order, and Doug Dahmann's affidavit. Gaines testified in the bankruptcy proceeding that since the first garnishment proceeding, it was his opinion that BBX owed GeoSouthern an additional $722,000 in revenues after GeoSouthern's joint-interest billings were netted. Gaines also testified he believed there were sufficient funds in the revenue account to cover GeoSouthern's revenues and that of another working interest owner.

The trial court granted GeoSouthern's second application and entered its "Second and Additional Order for Issuance of Prejudgment Writ of Garnishment," which garnished the additional $722,000 from the BBX Compass Bank revenue account. BBX did not move to dissolve the second writ of garnishment. Thereafter, GeoSouthern moved for entry of final judgment. BBX responded to the motion for entry of final judgment, contending the trial court improperly issued the writs of garnishment in the absence of a final judgment and that GeoSouthern "failed to meet [its] burden to 'state the grounds for issuing the writ and the specific facts relied' on 'to warrant the required findings by the court'" pursuant to Texas Civil Procedure Rule 658. The trial court entered a final judgment that BBX owes GeoSouthern not less than $2,436,547.65 pursuant to the court's final summary judgment order in the

companion case. The final judgment stated that "[a]t the time Compass Bank was served with the Writs, Compass Bank was indebted to BBX in the total amount of not less than $2,436,547.65[.]"

## Standard of Review

We review a trial court's decision on a motion to dissolve a garnishment for an abuse of discretion. *See Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 705 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (outlining standard of review); *see also Pallida, LLC v. Uballe*, No. 03-18-00365-CV, 2018 WL 6816680, at *2 (Tex. App.—Austin Dec. 28, 2018, no pet.) (mem. op.). A trial court "abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles." *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008) (citation omitted).

## Analysis

BBX challenges the validity of the trial court's prejudgment writs of garnishment and subsequent final judgment based on those writs. Specifically, BBX contends that GeoSouthern failed to meet the statutory requirements by failing to show: (1) the garnishment was for a debt; (2) that it was due, just, and unpaid; (3) BBX does not possess property in Texas sufficient to satisfy the debt; and (4) the garnishment is not sought to injure or harass BBX.

A plaintiff may file an application for writ of garnishment at the commencement of suit or any time during its pendency. *See* Tex. R. Civ. P. 658; *see also In re ATW Invs., Inc.*, No. 04-17-00045-CV, 2017 WL 1066803, at *2 (Tex. App.—San Antonio Mar. 22, 2017, orig. proceeding) (mem. op.) (noting "[a] plaintiff may file an application for writ of garnishment while his lawsuit is pending[]"). The application shall be supported by affidavits, comply with all statutory grounds, state the grounds for issuing the writ, and all facts the plaintiff relied upon to warrant the court's findings. *See* Tex. R. Civ. P. 658. Texas Civil Practice and Remedies Code section 63.001(2) provides one method whereby a party can obtain a writ of garnishment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 63.001(2). A writ of garnishment is available if

> (2) a plaintiff sues for a debt and makes an affidavit stating that:
>> (A) the debt is just, due, and unpaid;
>> (B) within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt; and
>> (C) the garnishment is not sought to injure the defendant or the garnishee[.]

*Id.* "Section 63.001 of the Civil Practice and Remedies Code states *what* the plaintiff must show to the court in order to obtain a pre-judgment writ, and Rule 658 guides the plaintiff in *how* it can show the statutory requirements of section 63.001 based on a belief." *Almanza Bus. Grp., LLC v. CBI Logistic Servs., L.L.C.*, No. 04-18-00321-CV, 2019 WL 2110120, at *2 (Tex. App.—San Antonio May 15,

7

2019, pet. denied) (mem. op.) (emphasis original). "No writ shall issue before final judgment except upon written order of the court after a hearing, which may be ex parte." Tex. R. Civ. P. 658.

Garnishment is considered summary and harsh, because a debtor's property may be impounded before a judgment is taken against him. *Beggs v. Fite*, 106 S.W.2d 1039, 1042 (Tex. 1937). Accordingly, a garnishment order must strictly comply with the statute. *See id.*; *Harper v. Spencer & Assocs., P.C.*, 446 S.W.3d 53, 56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (explaining "[t]hrough strict compliance with garnishment statutes" garnishment plaintiff steps into debtor's shoes as to garnishee). When a plaintiff's suit arises out of contract and the demand is liquidated, garnishment may issue. *See Cleveland v. San Antonio Bldg. & Loan Ass'n*, 223 S.W.2d 226, 228 (Tex. 1949). Liquidated means "the claim is not contingent, is capable of being definitely ascertained by the usual means of evidence and does not rest in the discretion of the jury." *In re ATW Invs., Inc.*, 2017 WL 1066803, at *2 (citing *Cleveland*, 223 S.W.2d at 228).

**Debt**

During the pendency of the underlying lawsuit on its breach of contract cause of action for non-payment of revenues, GeoSouthern filed two applications for prejudgment writs of garnishment. These revenue amounts were readily ascertainable, with BBX's records and own representatives testifying to the amounts

8

owed through specific time periods, and their determination did not rest within the jury's discretion. Accordingly, the revenue amounts were not contingent.

**Just, Due, and Unpaid**

Section 63.001(2) requires that a plaintiff make an affidavit that the debt is "just, due, and unpaid." Tex. Civ. Prac. & Rem. Code Ann. § 63.001(2)(A). In the first application, GeoSouthern alleged its claims were "liquidated, just, due, and unpaid." As support for the existence of this debt, in its first application, GeoSouthern cited to (1) the first partial summary judgment award of $1,714,547 for the sale of hydrocarbons between October 2016 and July 2017 that remained unpaid and (2) the deposition testimony of BBX Corporate Representative John Gaines that the revenue owed to GeoSouthern was $1,714,547.65. GeoSouthern attached exhibits to its application including the trial court's partial summary judgment order, GeoSouthern General Land Manager Doug Dahmann's affidavit, and BBX Corporate Representative Gaines's deposition testimony confirming the amount of revenues owed to GeoSouthern after netting. Dahmann averred that BBX was indebted to GeoSouthern in the liquidated amount of $1,714,547.65 through July 2017, which has not been satisfied. He further specifically averred that GeoSouthern's claim was "just, due, and unpaid." Dahmann also averred that in his capacity as GeoSouthern's "General Manager – Land[,]" he had personal knowledge of the facts set out in his affidavit. There was no dispute over title to the unpaid oil

and gas revenues. BBX withheld such revenues after a dispute arose over other predevelopment expenses were incurred by BBX and GeoSouthern refused to pay BBX. The facts pleaded in the first prejudgment application and Dahmann's affidavit met the requirements of 163.001(2). *See id.*

In its second application for prejudgment writ of garnishment, GeoSouthern sought to garnish an additional $722,000 in revenues BBX owed from August 2017 to and including January 2018. GeoSouthern likewise pleaded in its verified second application that the amount was "liquidated, just, due, and unpaid." GeoSouthern pointed to facts supporting this request, such as the first prejudgment writ of garnishment and additional testimony from BBX employees. GeoSouthern noted that Gaines provided testimony in a bankruptcy hearing for a related BBX entity that BBX owed GeoSouthern an additional $722,000 and that BBX's accountant, Laurel Vance, likewise testified that all GeoSouthern's joint-interest billings had been netted and were current, and that its remaining revenues had been deposited in BBX's revenue account. The exhibits GeoSouthern attached to its second application included the trial court's partial summary judgment order, Laurel Vance's deposition testimony regarding the revenues owed to GeoSouthern after netting and where they were deposited, BBX Corporate Representative Gaines's bankruptcy hearing testimony, and another affidavit from GeoSouthern General Land Manager Doug Dahmann. Dahmann averred that BBX was indebted to

GeoSouthern in the additional liquidated amount of $722,000 from August 2017 through January 2018, which had not been satisfied. In support of the second prejudgment application for writ of garnishment, Dahmann again averred that GeoSouthern's claim was "just, due, and unpaid." He also attested that in his capacity as GeoSouthern's "General Manager – Land[,]" he had personal knowledge of the facts set forth. The facts pleaded in the second prejudgment application and Dahmann's affidavit also met the first of 163.001(2)'s requirements. *See id.*

Both applications for prejudgment writ of garnishment and supporting affidavits satisfy the "just, due, and unpaid" requirement of section 163.001(2)(A).

**Property in Texas Subject to Execution Sufficient to Satisfy Debt**

BBX contends that GeoSouthern had to prove that BBX did not possess sufficient property in Texas to satisfy the debt, and GeoSouthern must provide specific facts it relied on. We disagree with BBX's contention. The statute expressly provides that the plaintiff must file an affidavit that avers that "within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt[.]" Tex. Civ. Prac. & Rem. Code Ann. § 63.001(2)(B). In both applications, GeoSouthern pleaded that to its "knowledge and after reasonable inquiry, [BBX] possesses property in Texas, but does not possess such property in Texas subject to execution that is sufficient to satisfy the liquidated amount owed." Likewise, GeoSouthern supported both applications with affidavits

11

from Dahmann averring that "[b]ased upon information . . . GeoSouthern believes BBX possesses property in Texas, but does not possess such property in Texas subject to execution that is sufficient to satisfy the liquidated amount" owed. Each of those affidavits described the information GeoSouthern relied upon to support this averment, including discovery responses, BBX bank records, and testimony of specific BBX witnesses.

The pleadings and affidavit filed by GeoSouthern in support of the garnishment met the requirements of establishing that it did not have knowledge that BBX possessed property in Texas subject to execution sufficient to satisfy the debt and the information relied upon in reaching that conclusion. *See id.*; Tex. R. Civ. P. 658. In its motion to dissolve, BBX failed to present any evidence that it possessed property in Texas subject to execution sufficient to satisfy the debt that would counter GeoSouthern's affidavits.

**Garnishment Not Sought to Injure**

BBX asserts GeoSouthern failed to show that the garnishment was not sought to injure or harass. However, GeoSouthern stated in both applications that the writ was not sought to injure or harass BBX and again provided affidavit testimony from Dahmann that GeoSouthern "is not seeking to injure or harass [Compass Bank] or BBX by applying for a writ of garnishment Section 63.001(2)(C) requires an affidavit supporting the application that states "the garnishment is not sought to

12

injure the defendant or garnishee[.]" Tex. Civ. Prac. & Rem. Code Ann. § 63.001(2)(C). Accordingly, GeoSouthern complied with this statutory requirement.

GeoSouthern strictly complied with the three statutory requirements when it sought these prejudgment writs of garnishment. *See id.* § 63.001(2); Tex. R. Civ. P. 658. The trial court did not abuse its discretion in denying BBX's motion to dissolve and challenge to the motion for entry of judgment on the prejudgment writs of garnishment. We overrule BBX's sole issue.

## Conclusion

We conclude that the trial court did not err by issuing pre-judgment writs of garnishment pursuant to Texas Civil Practice and Remedies Code section 63.001(2) when GeoSouthern followed the statutory requirements by averring BBX owed it an unpaid debt that was just and due in an amount certain, it had no knowledge of other property BBX possessed in Texas subject to execution that could satisfy the debt, and the garnishment applications were not filed to injure or harass BBX. Accordingly, we affirm the trial court's judgment garnishing the total amount of $2,436,547.65 owed to GeoSouthern in unpaid revenues from BBX's Compass Bank account.

AFFIRMED.

_____
CHARLES KREGER
Justice

13

Submitted on June 10, 2021
Opinion Delivered July 29, 2021

Before Kreger, Horton and Johnson, JJ.