**Opinion issued August 3, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00913-CV

————————————

**MICHAEL SCHAEFER, TRUSTEE, Appellant/Cross-Appellee**

**V.**

**BELLFORT CHATEAU LIMITED PARTNERSHIP,**
**Appellee/Cross-Appellant**

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2018-15069

## MEMORANDUM OPINION

Appellant/cross-appellee, Michael Schaefer, Trustee, challenges the trial

court's judgment entered, after a bench trial, in favor of appellee/cross-appellant,

Bellfort Chateau Limited Partnership ("Bellfort"), in their suit against each other for

declaratory judgments. In four issues, Schaefer contends that the evidence is legally insufficient to support the trial court's findings of fact and the trial court erred in awarding Bellfort attorney's fees.

In its sole issue on cross-appeal, Bellfort contends that the trial court erred in denying its request for contingent appellate attorney's fees.

We affirm.

## Background

In his original petition, Schaefer, a California resident, alleged that Bellfort received a judgment and turnover order against Schaefer and others in "a Harris County court" on March 3, 2004 (the "underlying judgment").[1] Schaefer asserted that the underlying judgment became dormant ten years later, on March 4, 2014, because Bellfort did not file a writ of execution within the statutory ten-year period and did not apply for a writ of scire facias or an action of debt before March 4, 2016.

According to Schaefer, Bellfort filed a writ of execution on December 19, 2014. And on June 13, 2016, the underlying judgment was "unlawfully and untimely domesticated in California" and "enforced [through] the garnishment of . . . Schaefer's wages." Schaefer sought a declaration that "because the [underlying] judgment was dormant without being properly renewed, it was not only

---

[1] *See Bellfort Chateau Ltd. P'ship v. Schaefer*, No. 2000-05873 (281st Dist. Ct., Harris County, Tex. Mar. 3, 2014), *aff'd*, No. 14-04-00254-CV, 2005 WL 1981299 (Tex. App.—Houston [14th Dist.] Aug. 18, 2005, pet denied) (mem. op.).

expired, but forever barred and could not be legally domesticated or enforced in California." He requested attorney's fees under the Uniform Declaratory Judgments Act (the "DJA").[2]

Bellfort answered, generally denying the allegations in Schaefer's petition. Bellfort also brought a counterclaim against Schaefer for declaratory relief, seeking a declaration "that the [underlying] [j]udgment [wa]s valid, subsisting and enforceable," "not dormant or expired," and "domesticated in . . . California." Bellfort requested attorney's fees under the DJA.[3]

At trial, Randall Wilkins, Bellfort's former counsel in the suit between Bellfort and Schaefer that resulted in the underlying judgment, testified that he recalled requesting and paying the fee for a writ of execution based on the underlying judgment in late 2004. The Harris County District Clerk issued a writ of execution in January 2005. Wilkins sent the "January 2005 writ back to the clerk" after reviewing it because he was "not happy with the wording." Along with "a redline version" of the writ, he "sent the clerk a letter with some suggested changes." Wilkins did not "deliver the January [2005] writ to the constable because [he] wanted it reworded; so [he] referred it to the . . . clerk." He later "found an unsigned copy" of the January 2005 writ in the clerk's records, but he "did not find a signed copy."

---

2      *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

3      *See id.*

3

Ultimately, Wilkins received and returned to the clerk a "February 2005 writ," issued under the trial court cause number for the underlying judgment, for which he had no changes. Wilkins searched the trial court's records but was unable to find a signed or stamped copy of either the January 2005 writ or the February 2005 writ. He asked the clerk's office to search its records, but it was also unable to find a copy of the signed February 2005 writ. Wilkins was able to obtain an unsigned copy of the February 2005 writ "but not a signed copy."

During his testimony, Wilkins was shown Defendant's Exhibit 8, a printout of a record from the Justice Information Management System ("JIMS") of the Harris County Constable's Office ("HCCO"), Precinct One, showing that a writ based on the underlying judgment was issued on January 14, 2005 and assigned tracking number 71860594, which was admitted into evidence. And he stated that Defendant's Exhibit 8 lists the "Serving Agency Receive Date" as February 24, 2005, the "Served Date" as March 11, 2005, the "Service Status" as "S," and the "Return Date" as March 30, 2005.The same tracking number that appears on Defendant's Exhibit 8 also appears on Defendant's Exhibit 9, another JIMS printout admitted into evidence, which refers to the "process type" as a "reissue" and shows a writ based on the underlying judgment was received by the HCCO, Precinct One, on February 24, 2005. Wilkins confirmed that he delivered only "one writ to the

4

constable" in 2005, and "[i]f the constable received a writ, it ha[d] to be" the writ that Wilkins characterized as the "February 2005 writ."

Defendant's Exhibit 9 states that the writ was "executed [on March 11, 2005] by selling the defendant's real property at public auction . . . ." Wilkins testified that he was present at the sale the judgment-debtor property that was the subject of the writ. After the sale, Wilkins received a bill of sale for the property from the HCCO, a copy of which was admitted into evidence as Defendant's Exhibit 10. The bill of sale recites:

> Whereas, by virtue of a certain "Alias" Execution and Order of Sale in Cause No. 2000-05873, . . . on a certain judgment rendered on the 3rd day of March, 2004, directed and delivered to me as Constable, Precinct 1 of Harris County, commanding me of the goods and chattels, lands and tenements of the said Michael Schaefer in his capacity as Trustee, and from Derek Schaefer and Michael Schaefer individually, jointly and severally, to make certain moneys in said writ specified I, Jack F. Abercia, Constable, Precinct 1, as aforesaid did on the 24th day of February, 2005, levy upon and take into my possession the property hereinafter described, and, after advertising the same as required by law, I did, on the 11th day of March, 2005, within the hours prescribed by law, at the Family Law Center, 1115 Congress, Harris County, in the City of Houston, Texas, sell said property at public venue when the same was struck off to Bellfort Chateau Limited Partnership for the bid of $10,000.

Michelle Gaines testified that she was the Manager of the Civil Support Section for the Harris County District Clerk's Office and previously she was the Civil Post-Trial Supervisor for the clerk's office. While serving as the Civil Post-Trial Supervisor, Gaines spoke with Bellfort's counsel about searching for a

5

writ of execution issued in 2005 based on the underlying judgment. Gaines confirmed that Defendant's Exhibit 8 was a screenshot of the "service return screen in the JIMS system," which was used by the clerk's office to track writs that had been issued, executed, or returned to the clerk's office at the time. And 71860594, the tracking number shown on Defendant's Exhibit 8, was unique to the writ issued by the clerk's office in 2005. The JIMS system automatically assigned the tracking number. So "if a totally new writ was issued, then it would have a different tracking number and a [different] transaction number."

At the time a writ of execution was issued by the clerk's office in 2005, the clerk's office was not "electronic; so [the writ] probably came in via mail" or it was "brought . . . into the office." According to Gaines, Defendant's Exhibit 8 shows that the receipt number for the writ issued by the clerk's office in 2005 was 104256, the "Served Date" was March 11, 2005, and the "Return Date" was March 30, 2005. The exhibit also shows that the serving agency was "CO1," which, Gaines explained, referred to the HCCO, Precinct One.

Gaines also testified that Defendant's Exhibit 7, which was admitted into evidence, is a copy of a printout of the electronic record from the clerk's office of "the transactions [i]n th[e] particular [trial court] case number," in which the underlying judgment was rendered. The tracking number and the receipt number

6

matched those in Defendant's Exhibit 8, as did the request date of December 29, 2004 and the transaction number of 7063346.

Gaines explained that, according to the clerk's office's practice at the time the writ was processed, before "the clerk enter[ed] the information into the JIMS system," the clerk matched the number on the return to the number on the writ issued "to make sure that the tracking numbers and the dates [we]re correct." Gaines confirmed that Defendant's Exhibits 7 and 8 showed that a writ was issued by the clerk's office on January 14, 2005 (the "2005 writ of execution"), was received by the HCCO, Precinct 1, on February 24, 2005, was served by the HCCO, Precinct 1, on March 11, 2005, and was returned to the clerk's office on March 30, 2005.

As for the reason for a lack of a physical copy of the signed 2005 writ of execution issued by the clerk's office, Gaines stated that she could not determine why it was not found. But she noted that "[twelve] years ago, everything was [in] paper format" and there were "more than one set of hands touching [each] particular document . . . ." After diligently searching and not finding the 2005 writ of execution, Gaines assumed "that it was misplaced or displaced somewhere between the time of being entered into the [JIMS] system and going to the actual case file."

Gaines further confirmed that the copy of the post-trial clerk's record, admitted into evidence as Defendant's Exhibit 12, showed that there were three writs issued in the suit that resulted in the underlying judgment: the first writ was issued

7

on November 9, 2004, and returned on December 10, 2004;[4] the second writ (i.e., the 2005 writ of execution) was issued on January 14, 2005, and returned on March 30, 2005; and the third writ was issued on December 22, 2014, and returned on June 24, 2015 (the "2014 writ of execution").[5]

Phyllis Washington, the Department Supervisor in the Civil/Family Post-Trial Department of the Harris County District Clerk's Office, testified that she was familiar with the writs issued in the suit in which the underlying judgment was rendered. She identified Defendant's Exhibit 8 as a copy of a JIMS system "information screen" that documented the return of the 2005 writ of execution that was assigned tracking number 71860594. It showed that the serving agent was the HCCO, Precinct One. As for the meaning of the notation "S" as "Service Status," she was "not sure," but from what she understood, it would mean "served." (Internal quotations omitted.) The 2005 writ of execution "was returned" to the clerk's office on March 30, 2005.

In regard to the clerk's office's procedure for a returned writ, Washington explained that in 2004 and 2005, the clerk's office manually updated its records when a new writ was received and manually entered the return date when a writ was

---

[4]    A copy of the 2004 writ of execution was admitted into evidence as Defendant's Exhibit 3.

[5]    A copy of the 2014 writ of execution was admitted into evidence as Plaintiff's Exhibit 6.

returned. When the HCCO returned a writ, the clerk's office usually received the "writ as well as the constable notes." "The constable return [wa]s usually on top of it, and then the writ [wa]s normally second. And those two documents [we]re returned back to [the clerk's office]." Any one of "up to [fourteen] clerks" might have received it. According to the clerk's office policies, the receiving clerk was "supposed to match" the tracking number of the returned writ with the writ that was issued in the clerk's office's "system, as well as the date that it was issued."

As to attorney's fees, Schaefer's counsel, Karalynn Cromeens, testified that her law firm had represented Schaefer in the current suit since March 2018 and Schaefer had incurred approximately $47,000 in legal fees for that representation. Bellfort's counsel, Derek Obialo, testified that he took over representation of Bellfort in the current suit from Bellfort's former attorneys, who had charged Bellfort $46,797.95 before their withdrawal. Beginning in late June 2018, Obialo started representing Bellfort at a discounted rate of $275 per hour. He had expended 118.75 hours in that representation, while his paralegal staff had worked on the case for 63.75 hours—time that was charged at a rate of $150 per hour. Obialo's law firm had charged Bellfort $42,218.75 in fees through trial, making the total legal fees incurred by Bellfort $89,016.70.

During their testimony, the attorneys both outlined the tasks that they accomplished in representing Schaefer and Bellfort, and the trial court admitted in

9

evidence their itemized billing statements. Both Schaefer and Bellfort asked the trial court to award them fees for appellate representation contingent on their own success on appeal.

Following Obialo's testimony, Schaefer recalled Cromeens as a rebuttal witness. She testified, in her expert opinion, that "the amount of $89,000 for [Bellfort's] defense of th[e] suit [wa]s not reasonable and necessary," pointing out that it was "over double" the fees that Cromeens's law firm had charged Schaefer in the same case.

> The trial court rendered judgment in favor of Bellfort, declaring that:

> The writ of execution issued by the Harris County District Clerk on January 14, 2005 [(i.e., the 2005 writ of execution)] extended the validity of the final judgment rendered in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al. from January 14, 2005 to January 14, 2015. And the writ of execution issued by the Harris County District Clerk on December 19, 2014 [(i.e., the 2014 writ of execution)] further extended the validity of the final judgment in Cause No. 2000-05873 to December 19, 2024.

The trial court awarded Bellfort "reasonable and necessary attorney's fees in the amount of $89,016.70." But it declined to award Bellfort the requested contingent appellate attorney's fees, striking through the proposed language on that issue before signing the judgment.

The trial court entered the following findings of fact and conclusions of law in support of its judgment:

# I. Findings of Fact

1. On November 9, 2004, the Harris County District Clerk issued a writ of execution in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al, in order to execute the [underlying] [j]udgment of this [c]ourt.

2. On January 14, 2005, the Harris County District Clerk issued a writ of execution in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al, with Tracking No. 71860594, in order to execute the [underlying] [j]udgment of this [c]ourt [(i.e., the 2005 writ of execution)].

3. On February 24, 2005, the [2005] writ of execution with Tracking No. 71860594 was sent to and received by the [HCCO] for service and execution.

4. On March 11, 2005, the [2005] writ of execution with Tracking No. 71860594 was executed by the Harris County Constable by conducting a sale of the property of the defendant judgment-debtor in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al.

5. On March 30, 2005, the [2005] writ of execution with Tracking No. 71860594 was subsequently returned after execution by the Harris County Constable to the Harris County District Clerk.

6. On December 19, 2014, the Harris County District Clerk issued another writ of execution in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al, in order to execute the [underlying] [j]udgment of this [c]ourt [(i.e., the 2014 writ of execution)].

7. On August 18, 2005, the Fourteenth Court of Appeal rendered its judgment pursuant to an appeal by the defendants in Cause No. 2000-05873 from the [underlying] [j]udgment of this [c]ourt.

8. The plaintiff in this case is the individual named Michael Schaefer.

11

9.     Defendant Bellfort Chateau Limited Partnership incurred reasonable and necessary attorney's fees of $89,021.27 in this lawsuit.

II.     Conclusions of Law

11.     The [2005] writ of execution . . . was properly issued and delivered to the [HCCO] for execution, thereby extending the validity of the [underlying] [j]udgment for ten years to January 14, 2015.

12.     The [2014] writ of execution . . . extended the validity of the [underlying] [j]udgment for another ten years to December 19, 2024.

13.     The [underlying] [j]udgment rendered in this court on March 3, 2004 in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al is not dead or dormant, but is valid, subsisting and capable of being enforced.

14.     The ten-year period during which execution must issue to keep a judgement from becoming dormant does not begin to run until all appeals are concluded.

15.     Defendant Bellfort Chateau Limited Partnership is entitled to judgment for its reasonable and necessary attorney's fees of $89,016.70 incurred in this lawsuit.

(Internal footnote omitted.)

After Schaefer moved for a new trial, the trial court denied the motion.

**Writs of Execution**

In his first and third issues, Schaefer argues that the 2005 writ of execution was insufficient to renew the underlying judgment because there was no evidence that it was properly issued and, thus, the 2014 writ of execution that resulted in the garnishment of Schaefer's wages "was issued for a judgment that [had] bec[o]me . . . dormant in November 2014" and was invalid.  We construe these

issues as a challenge to the legal sufficiency of the evidence supporting the trial court's findings of fact relating to the validity of the 2005 and 2014 writs of execution.

In an appeal from a bench trial, we review legal-sufficiency challenges to the trial court's findings of fact under the same standards that are applied to review the evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Where, as here, the trial court issued findings of fact and conclusions of law, the trial court's findings of fact have the same weight as a jury verdict. *Merry Homes, Inc. v. Luu*, 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for the sufficiency of the evidence. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). We defer to unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

An appellant who attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must demonstrate on appeal that no evidence supports the adverse finding. *Exxon Corp. v. Emerald Oil & Gas, Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We consider the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could

13

not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain a no-evidence challenge if the record shows: (1) a complete absence of evidence of a vital fact, (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *See id.* at 810.

We are mindful that the trial court, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* at 819; *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The trial court may choose to believe one witness and disbelieve another. *See City of Keller*, 168 S.W.3d at 819. It is the fact finder's role to resolve conflicts in the evidence, and we may not substitute our judgment for that of the fact finder. *See McKeehan*, 554 S.W.3d at 698.

A judgment remains enforceable unless it becomes dormant. *See Harper v. Spencer & Assocs.*, 446 S.W.3d 53, 55 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). After a judgment is rendered, a judgment creditor may renew it indefinitely by having a writ of execution issued within ten years of a previous writ to prevent the judgment from becoming dormant. *Id.* But "[i]f a writ of execution is not issued within [ten] years after the rendition of a judgment of a court of record . . . , the

14

judgment is dormant and execution may not be issued on the judgment unless it is revived." TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a).

As the judgment creditor, Bellfort bore the burden of proving the timely, valid issuance of a writ of execution, which required Bellfort to show not only clerical preparation of the writ within the statutory time period, but also its actual delivery to the appropriate officer within the period or, if actual delivery is made after expiration of the statutory period, then reasonable diligence in making the delivery from the date shown on the writ until actual delivery to the officer.[6] *See Rollins v. Am. Exp. Travel Related Servs. Co.*, 219 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Pertinent to Schaefer's legal-sufficiency challenge, the trial court made the following findings of fact:

> 2.    On January 14, 2005, the Harris County District Clerk issued a writ of execution in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al, with Tracking No. 71860594, in order to execute the [underlying] [j]udgment of this [c]ourt [(i.e., the 2005 writ of execution)].

---

[6]    In his briefing, Schaefer cites to Texas Rule of Civil Procedure 596 as the source of this delivery requirement, but that rule, by its terms, applies to writs of attachment, not to writs of execution. A writ of attachment is for the purpose of seizing property to secure it in case judgment is obtained, while a writ of execution enforces a judgment that has already been obtained. *See Gulf Oil Co. U.S. v. First Nat'l Bank of Hereford*, 503 S.W.2d 300, 303 (Tex. App.—Amarillo 1973, no writ); *see generally* TEX. R. CIV. P. 621–656 (applying to execution of judgments).

15

3.    On February 24, 2005, the [2005] writ of execution with Tracking No. 71860594 was sent to and received by the [HCCO] for service and execution.

4.    On March 11, 2005, the [2005] writ of execution with Tracking No. 71860594 was executed by the Harris County Constable by conducting a sale of the property of the defendant judgment-debtor in Cause No. 2000-05873, Bellfort Chateau Limited Partnership v. Michael Schaefer Trustee, et al.

5.    On March 30, 2005, the [2005] writ of execution with Tracking No. 71860594 was subsequently returned after execution by the Harris County Constable to the Harris County District Clerk.

Schaefer is correct that Bellfort did not present direct evidence of actual delivery of the 2005 writ of execution to the HCCO, Precinct One, because, as Bellfort conceded and the clerk's office's employees testified, neither the clerk's records nor the constable's records contained a copy of the signed 2005 writ of execution. But the record contains circumstantial evidence showing that delivery occurred.[7]  Bellfort's former counsel Wilkins testified that he requested a writ of execution related to the underlying judgment and paid the fee for its issuance in late 2004. The Harris County District Clerk sent him the writ of execution in January 2005, and he drafted revisions on that writ and sent it back to the clerk. The clerk then sent him what he characterized as the "February 2005 writ," issued under the

---

[7]    Circumstantial evidence is "simply indirect evidence that creates an inference to establish a central fact." *In re Lipsky*, 460 S.W.3d 579, 588–89 (Tex. 2015).

16

same tracking number as the January 2005 writ, which he returned with no changes.[8] Wilkins also stated that he delivered a writ to the constable's office—the writ that he named the "February 2005 writ." And Wilkins attended the sale, by the HCCO, Precinct One, of the judgment-debtor property that was the subject of the 2005 writ of execution, and, after the sale, he received a bill of sale from the HCCO.

Records from the Harris County District Clerk's office and the HCCO, Precinct One, which were admitted into evidence, show that on February 24, 2005, the 2005 writ of execution with tracking number 71860594 was sent to and received by the HCCO for service and execution. Clerk's office employee Gaines testified that Defendant's Exhibit 8, a copy of the JIMS Civil Case Intake Service Return for the suit that resulted in the underlying judgment, which was used to track the writs that had been issued, executed, or returned to the clerk's office, references the pertinent case citation and tracking number 71860594, lists the "Serving Agency Receive Date" as February 24, 2005, the "Served Date" as March 11, 2005, the

---

[8] Schaefer argues that "[t]he writ of execution issued on January 14, 2005 [(i.e., the 2005 writ of execution)] was not delivered" because "the issued writ was received by [Wilkins], rewritten and returned to the court clerk." This is a red herring. The evidence shows that the clerk's office used the same tracking number with the revised writ that it had used with the original writ which, according to the evidence, was the clerk's office's practice when making minor revisions or corrections to the language of a writ of execution. And Defendant's Exhibit 9, the JIMS record bearing the same tracking number and showing that the HCCO, Precinct One, received the writ on February 24, 2005, refers to the "process type" as a "reissue." Thus, the writ that was issued and delivered in February 2005, which Wilkins characterized as the "February 2005 writ," was the 2005 writ of execution.

17

"Service Status" as "S," and the "Return Date" as March 30, 2005. And Gaines confirmed that the writ issued in 2005. Clerk's office employee Washington testified that she understood the "S" for "Service Status" to mean "served." The records of the clerk's office and the HCCO, Precinct One, show that the 2005 writ of execution was served on March 11, 2005 and was returned on March 30, 2005. The HCCO, Precinct One, documented the execution sale in an April 11, 2005 bill of sale.

Gaines also provided a possible reason for why, after a diligent search, a signed copy of the 2005 writ of execution could not be found. She explained that, in 2005, "everything was paper format" and "more than one set of hands" might have touched a particular document. As a result, a document could be "misplaced or displaced somewhere between the time of being entered into the system and going to the actual case file."[9]

Viewed in the light most favorable to the trial court's findings, we conclude that more than a scintilla of evidence supports its findings that in January 2005, the clerk's office issued the 2005 writ of execution based on the underlying judgment,

---

[9] The loss of filings destined for a clerk's record is not unheard of: Texas Rule of Appellate Procedure 34.5 provides specific procedures for supplementing the record for an appeal if a filing is lost or destroyed. *See* TEX. R. APP. P. 34.5(e) (allowing parties to supplement record with copies of lost documents by written stipulation or, if parties cannot agree on contents, requiring trial court to "determine what constitutes an accurate copy of the missing item and order it to be included in the clerk's record or a supplement").

18

that writ was sent to and received by the HCCO, Precinct One, and it was executed by the HCCO in March 2005 by conducting a sale of certain judgment-debtor's property. We thus hold that the evidence is legally sufficient to support the trial court's declaration that the 2005 writ of execution was properly issued and thus renewed the underlying judgment and, as a result, the 2014 writ of execution was valid.[10] *See Harper*, 446 S.W.3d at 55.

We overrule Schaefer's first and third issues.

## Attorney's Fees

In his fourth issue, Schaefer argues that the trial court erred in awarding Bellfort attorney's fees because the $89,016.70 in fees incurred by Bellfort were neither reasonable nor necessary and "were more than double the fees" incurred by Schaefer.[11] In its sole issue on cross-appeal, Bellfort argues that the trial court erred in denying its request for contingent appellate attorney's fees because "[e]vidence

---

[10] Because we uphold the trial court's conclusion that the 2005 writ of execution was valid, we need not address Schaefer's second issue concerning the beginning date for determining whether the judgment is enforceable. *See* TEX. R. APP. P. 47.1.

[11] Our affirmance of the trial court's declaratory judgment obviates the need to address Schaefer's argument, in his fourth issue, that Bellfort was not entitled to recover attorney's fees under the DJA because it should not have been the prevailing party. *See id.*; *cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 ("[T]he court [under the DJA] may award costs and reasonable and necessary attorney's fees as are equitable and just."); *Castille v. Serv. Datsun, Inc.*, No. 01-16-00082-CV, 2017 WL 3910918, at *10–11 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem. op.) ([A]n award of attorney's fees under the DJA is not conditioned upon a party prevailing on . . . [a] declaratory judgment claim.").

of reasonable and necessary contingent appellate attorney's fees . . . was provided by . . . expert testimony" at trial.

Generally, attorney's fees are not recoverable in Texas unless allowed by contract or statute. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992); *Indian Beach Prop. Owner's Ass'n v. Linden*, 222 S.W.3d 682, 705 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The DJA provides that a trial court "may" award reasonable and necessary attorney's fees that are "equitable and just." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The question of whether a trial court's award of attorney's fees is reasonable and necessary is reviewed for an abuse of discretion. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012); *see also Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("[T]he [DJA] entrusts attorney fee awards to the trial court's sound discretion . . . ."). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). When a trial court does not specify the basis for its attorney's fee award, we will uphold its ruling on any basis supported by the evidence. *See Weingarten Realty Inv'rs v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Whether attorney's fees are reasonable and necessary is ordinarily a decision left to the fact finder. *Rohrmoos Venture v. UTSW DVA Healthcare*, 578 S.W.3d

20

469, 489 (Tex. 2019); *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009). Evidentiary sufficiency issues are not independent grounds under this standard but the sufficiency of the evidence is a relevant factor in assessing whether the trial court abused its discretion. *Kubbernus v. ECAL Partners*, 574 S.W.3d 444, 486 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see also Dernick Res., Inc. v. Wilstein*, 471 S.W.3d 468, 490 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (attorney's fee award must be supported by evidence that fees are reasonable and necessary). The hybrid analysis involves a two-pronged inquiry: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) if so, whether the trial court erred in its application of that discretion. *Kubbernus*, 574 S.W.3d at 486; *City of Houston v. Kallinen*, 516 S.W.3d 617, 626 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Generally, in determining whether attorney's fees are reasonable and necessary, courts consider:

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2)    the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (alteration in original); *see also Bocquet*, 972 S.W.2d at 21 (noting *Arthur Andersen* factors "guide the determination of whether attorney fees are reasonable and necessary"); *Wayland v. City of Arlington*, 711 S.W.2d 232, 233 (Tex. 1986) ("One of the factors in determining the reasonableness of attorney's fees [is] the amount of damages awarded."); *Calhoun/Holiday Place, Inc. v. Wells Fargo Bank, N.A.*, No. 01-14-00872-CV, 2016 WL 7671372, at *8 (Tex. App.—Houston [1st Dist.] Dec. 22, 2016, pet. denied) (mem. op.) ("A trial court need not receive evidence on each *Arthur Andersen* factor . . . .").

The fee claimant bears the burden of providing sufficient evidence to support the trial court's attorney's fee award. *Rohrmoos Venture*, 578 S.W.3d at 498. This includes evidence of (1) the particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate

for each person performing such services. *Id.* Contemporaneous billing records are not required to prove that the requested fees are reasonable and necessary. *Id.* at 502. But "[g]eneral, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. There must be some evidence to inform the trial court of the time spent on specific tasks to enable the fact finder to meaningfully review the requested fees. *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014). Charges for duplicative, excessive, or inadequately documented work should be excluded. *El Apple I*, 370 S.W.3d at 762.

Schaefer points out that the parties presented controverting evidence as to whether Bellfort's attorney's fees were reasonable and necessary. Cromeens, Schaefer's counsel, testified that the fees were not reasonable and necessary, explaining that Bellfort's attorney's fees were nearly double the fees that her law firm had charged Schaefer in the case. But Obialo, Bellfort's counsel, testified that he took over Bellfort's representation after the case began and agreed to represent Bellfort at a discounted rate, and the billing records showing the tasks performed by Obialo and his legal assistant in representing Bellfort were admitted into evidence. The trial court, acting within its discretion, could have considered that Bellfort had the greater task because it bore the burden of proving the validity of the 2005 and 2014 writs of execution and had to gather circumstantial evidence to prove up the 2005 writ of execution after discovering that a signed copy was not preserved in the

Harris County District Clerk's records. And the trial court could have considered that, despite Obialo having discounted his customary hourly rate for Bellfort, Schaefer's attorney's fees were lower because Cromeens's firm was larger and had attorneys with less experience available to work on the case at a lower billing rate, while Obialo was a sole practitioner. We hold that the trial court did not err in awarding Bellfort $89,016.70 in attorney's fees.

As for the trial court's decision not to award Bellfort contingent appellate attorney's fees, Bellfort argues that the trial court should have awarded it contingent appellate fees because the trial court awarded pre-judgment attorney's fees and there was legally and factually sufficient evidence to support an award of contingent appellate attorney's fees. We note that "a party may be awarded reasonable and necessary attorney's fees for preparation and trial but denied appellate attorney's fees under one of the discretionary statutes because such fees would not be equitable and just." *Ogden v. Ryals*, No. 14-10-01052-CV, 2012 WL 3016856, at *5 (Tex. App.—Houston [14th Dist.] July 24, 2012, no pet.) (mem. op.); *see City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 754–55 (Tex. App.—Fort Worth 2008, pet. dism'd) (affirming award of $0 for appellate attorney's fees where party was awarded $83,200 for representation through trial); *see also Hansen v. Acad. Corp.*, 961 S.W.2d 329, 333–34 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (affirming denial of appellate attorney's fees). The trial court, acting within

24

its discretion, could have considered the disparity in the amount of legal fees incurred by each party through trial and Schaefer's opposition to Bellfort's fee request in deciding not to award Bellfort contingent attorney's fees. We hold that the trial court did not err in refusing to award Bellfort contingent appellate attorney's fees.

We overrule Schaefer's fourth issue and Bellfort's sole issue on cross-appeal.

**Conclusion**

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Justices Countiss, Rivas-Molloy, and Guerra.